JAMES F. CAREY vs. MILFORD AND UXBRIDGE STREET
RAILWAY COMPANY.

Worcester.    October 2, 1906. — November 19, 1906.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Negligence.    Street Railway.*

If a horse attached to a grocer's wagon is slow and of a quiet disposition and not
afraid of electric cars and has been used for four or five months in delivering
groceries from house to house without being hitched by a weight or otherwise
when left by his driver and never has started without his driver, and if the
driver leaves this horse standing unhitched on a street, along one side of which
electric cars run, in front of a house at which the horse has been accustomed
to stand while groceries were being delivered and goes into the house to deliver
groceries, and if after being absent only a minute he returns and finds the
horse and wagon gone, in an action by the owner of the horse and wagon against
the street railway company operating cars on the street for the killing of the
horse and the injury to his wagon and harness caused by their being run into by
a car of the defendant while the horse was without a driver, the question whether
the plaintiff's servant was in the exercise of due care in leaving the horse un-
hitched while he went into the house is for the jury.

In an action by a grocer against a street railway company for the killing of the
plaintiff's horse and injuries to his wagon and harness from being run into by a
car of the defendant while the horse was astray without a driver and was pro-
ceeding on the track toward the car on a winter evening after dark, if it appears
that the plaintiff's driver got on the car and immediately informed the con-
ductor that his horse and wagon were astray and might get on the track, and
if the conductor testifies that " he thought it his duty to notify the motorman,
and had started in just as the accident occurred," that he thought that he could
walk the length of the car, which was only forty feet long, in half a minute if
he had a clear aisle and that he had a clear aisle that night, and in another part
of his testimony says that it was about a minute and a half after he was told
before the horse was struck, and there is other testimony that the car went
about a quarter of a mile after the driver got on before the accident happened,
the question whether the conductor was negligent in failing promptly to inform
the motorman of the danger after he was told of it himself is for the jury.

TORT for the killing of the plaintiff's horse and injury to his
wagon and harness and the contents of the wagon from being
run into by a car of the defendant at a place called Braggville
between the towns of Milford and Holliston, as the defendant's
car was going from Milford toward Framingham about seven
o'clock in the evening of December 8, 1904.    Writ dated
December 17, 1904.

In the Superior Court the case was tried before *Pierce*, J. The driver employed by the plaintiff had left the team unhitched in the highway in which the defendant's track runs while he went into a house to deliver groceries. Upon his return the horse had gone, and it afterwards was struck while proceeding up the track toward an approaching car at a substantial distance from the place where the team had been left. The track of the defendant at the place where the team was left and also at the place of the accident runs on the side of the highway outside the general travelled path of the road.

The material evidence is described sufficiently in the opinion. At the close of the evidence, the defendant asked the judge to rule that upon all the evidence the plaintiff could not recover, and that the jury must find for the defendant. The judge refused to rule as requested and submitted the case to the jury.

The jury returned a verdict for the plaintiff in the sum of $293.20; and the defendant alleged exceptions.

*J. C. F. Wheelock*, for the defendant.

*J. B. Ratigan*, (*J. E. Swift* with him,) for the plaintiff.

KNOWLTON, C. J.   This case may be divided into two parts, the first relating to the conduct of the plaintiff's driver in leaving his horse unfastened while he went into a house to deliver groceries, and the second to the conduct of the defendant's conductor in failing to inform the motorman that there was a horse and wagon astray upon the street, with which there might be danger of collision.

We cannot say, as a matter of law, that the driver was negligent in momentarily leaving the horse unhitched while he went into the house to deliver groceries. Ordinarily it is negligent to leave a horse and wagon unhitched and unattended upon a public street. But there are some horses which can be so left for a short time, under some conditions, without negligence. The horse in this case was a large, slow animal, of quiet disposition, which had been used by the plaintiff four or five months in delivering groceries from house to house. It had been the custom to leave her without fastening her or using a weight, and both the plaintiff and his driver testified that they had never known her to go away alone before. The house where she was left on this occasion was one at which she had been accustomed

to stand while goods were being delivered. She was not at all afraid of electric cars. The driver testified that he was absent only about a minute before he came out from the house and found the horse and wagon gone. The case is like *Southworth* v. *Old Colony & Newport Railway*, 105 Mass. 342, 344, in which a similar question was held to have been rightly left to the jury. It is different from *Stacey* v. *Haverhill, Georgetown & Danvers Street Railway*, 191 Mass. 326, in which it appeared that the horse was sometimes fastened with a weight, but on this occasion was left alone ten minutes, in a place where there was a temptation to graze, and wandered away to indulge his natural propensity.

The defendant contends that there was no evidence of negligence on the part of either of its servants. The accident happened at about seven o'clock in the evening of December 8. The night was rather dark, and the motorman had no reason to expect the approach of a stray horse and wagon on the track. But if we assume, in favor of the defendant, that the jury would not have been warranted in finding the motorman negligent, it was proved beyond dispute that, quickly after the plaintiff's driver got upon the car, he made the conductor understand that his horse and wagon were astray, and that there might be danger of encountering them. The conductor testified that "he thought it his duty to notify the motorman, and had started in just as the accident occurred." The car was only forty feet long, and he testified that he thought he could walk the length of the car in half a minute if he had a clear aisle, and that he had a clear aisle that night. In one part of his testimony he said that it was about a minute and a half after he was told before the horse was struck, and there was other testimony that the car went about a quarter of a mile after the driver got on, before the accident. The evidence tended to show that the conductor was informed of the stray horse and should have understood that there was danger of a collision as soon as the driver got upon the car.

We are of opinion that it was a question of fact for the jury, whether the conductor exercised due care to inform the motorman of the danger promptly after he was told of it himself.

*Exceptions overruled.*