MARY A. O'CONNOR, administratrix, *vs.* ARTHUR J. HICKEY.

Suffolk.    March 9, 1927. — May 23, 1927.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & WAIT, JJ.

*Negligence,* Contributory, In use of highway, Municipal regulation. *Horse. Evidence,* Competency. *Practice, Civil,* Charge to jury.

At the trial of an action by an administrator for causing conscious suffering and the death of a man who, when seventy-two years of age, using a cane, and with clouded eyesight, was run into, as he was crossing a street and nearly had reached the further sidewalk, by a horse which had run away after having been left by the defendant's employee unhitched and unattended for less than five minutes on an intersecting street, there was evidence that the decedent was trying to get on the sidewalk and was almost on the curb when he was struck. *Held,* that

(1) The intestate was bound only to use ordinary care, and in determining what was ordinary care the jury were to consider his infirmity of vision and other conditions of physical weakness incident to his age, and all the conditions bearing upon the question, what care was reasonably necessary to insure his safety;

(2) It could not be ruled as matter of law that the intestate was careless;

. (3) On the question of negligence of the defendant's employee, it was unnecessary for the plaintiff to offer evidence that the horse had previously shown a propensity to run wild when harnessed to a vehicle and driven on a public way, and that the defendant knew or should have known of such habit;

(4) There was evidence warranting a finding of negligence on the part of the defendant's employee;

(5) The defendant should have been permitted to introduce in evidence a rule, in force in the city where the accident occurred, that "No horse shall be left unattended for a longer period of time than five minutes unless he is tied to a post or weight, or unless the wheels of the vehicle to which he is harnessed are securely fastened or chained," such

rule being admissible as bearing on the standard of duty which the defendant was called upon to fulfil and also, under the count for causing death, upon the degree of culpability of the defendant's employee, if any;

(6) The jury should have been instructed in substance that in the exercise of ordinary care the intestate, if found to be of defective vision, should, as matter of general knowledge, take more care and employ keener watchfulness in walking upon the street and avoiding conditions than a person with good eyesight, in order to reach the standard established by the law for all persons alike, whether they be weak or strong, sound or deficient.

TORT for causing conscious suffering and the death of the plaintiff's intestate, William O'Connor. Writ dated April 17, 1924.

In the Superior Court, the action was tried before *Macleod*, J. Material evidence is stated in the opinion. At the close of the evidence, the defendant asked, among others, for the following rulings:

"8. The owner or keeper of a domestic animal is bound to exercise reasonable care to prevent injury being done by it to another. If such animal is rightfully in the place where the mischief is done, unless it appears that the animal is vicious and that that fact is known to the owner or keeper, there is no liability.

"9. The burden of proving that the defendant or his servant knew or ought as reasonable men to have known of the vicious habit of the horse is upon the plaintiff throughout in this case."

"11. It is not negligence as a matter of law to leave a horse unweighted or unfastened to a post, in the absence of some exciting cause which the defendant should have anticipated might excite the horse to run away.

"12. There is not sufficient evidence in this case of any exciting cause which should have led the defendant or his agent to expect that the horse might be induced to run away on that occasion."

The judge refused so to rule.

Portions of the charge to the jury referred to in the opinion were as follows:

"In that aspect of the case, while I have referred to any physical defect as importing, perhaps, an obligation upon

him to have that in mind when determining his own course of conduct and what was reasonable and proper for him to do, it is none the less true that if a man has defective hearing, for instance, or if he fails to hear or see an automobile because his hearing is defective, that he is not to be judged by the standard of a man of good hearing and good sight. All that was required of this man was to have exercised the faculties which he possessed, and if a man possessing good vision and good hearing, standing at that point, might have heard or seen the horse earlier, that would not necessarily impose on this plaintiff if he was suffering from disability, the obligation at his peril to see the approaching danger at the same time that a man with normal faculties would do. In that respect it is not essentially different from the rule applicable to a young child on the street. A young child, if he is old enough to exercise some care for himself, a child six or seven years old, if he is on the street unattended, he has got to show that he has exercised some degree of care for his own protection, but the law recognizes that a child may jump out after a ball in the street, or do some other silly thing that an adult would not do, and he is to be judged by the standard of what a boy of that age could reasonably be expected to do under the circumstances.

"I am not presenting that as a complete analogy to this case, but merely in an effort to show the general background for the principle involved here.

"If a man is infirm, it is his duty to have that in mind, in order to determine his course of conduct. It would be very important, in determining whether or not he would cross the street at all, if conditions existed there that might create a hazard to him, but might not create a hazard to somebody who might step along faster and get out of the way.

"If he starts out with conditions that do not in any way appear to him, as a reasonable man, to involve any hazard for his own safety, and a situation later develops where through his defective hearing or sight an injury comes, then he is to be judged by what he ought to have done in that situation, having the faculties that God gave him, in the state in which they existed at that time, and you are to judge the

conduct of the plaintiff here by the circumstances upon the evidence disclosed.

"If he was negligent, if he ought to have done something different which a man in his physical condition should have done and if, having done that he could have averted the accident, then it would have been his duty to do it, and if he did not do it he cannot recover.

"Unless you are satisfied that the plaintiff did what he should have done, judged by the standard of the ordinarily careful and prudent man, but affected by the special considerations applying to a man in his physical condition, he cannot recover.

"If you find that he did all that could reasonably have been expected of him, and if you find that he was not negligent in a way that contributed to the accident, then it becomes important to determine whether or not the defendant was negligent."

The jury found for the plaintiff on the count for conscious suffering in the sum of $500 and on the count for death in the sum of $5,806.34. The defendant alleged exceptions.

*J. T. Pugh,* for the defendant.

*S. P. Sears,* for the plaintiff.

BRALEY, J. The jury would have been warranted on the evidence in finding the following facts. The defendant, who was engaged in carrying on a laundry, used in his business on December 27, 1923, a horse drawn vehicle. The driver of the team, an employee of the defendant, while passing over a public way, referred to in the record as Broadway in the city of Boston, stopped the team near the curbing on the right hand side of the street, threw the reins on the horse's rump, and went into a restaurant where he remained less than five minutes. A lad, one William Dwyer, not quite sixteen years of age, also an employee of the defendant, remained on the wagon seat, but "had no duties in connection with the team." During the absence of the driver, the horse, having been left unhitched, ran violently through the street, and, although Dwyer caught hold of the reins and tried to stop the horse, his efforts were unavailing, and, being without guidance, the team, moving at the rate of

fifteen miles an hour, in passing F Street, which intersected Broadway, ran into the plaintiff's intestate, a pedestrian seventy-two years old, who was on the crosswalk of F Street and had nearly reached the sidewalk, causing severe injuries from which after a short period of conscious suffering he died.

It is settled that the defendant and the intestate were lawfully using the public ways under the reciprocal duty of exercising due care in their relations to each other as travellers. *Hennessey* v. *Taylor*, 189 Mass. 583. The defendant contends, that the intestate's negligence, which is alleged in the answer, having contributed to his injury and death, the plaintiff cannot recover. G. L. c. 231, § 85.

It was unquestioned, that the intestate used a cane, and that his eyesight had been clouded especially "at the rims" for ten years. While at the hospital, to which he had been removed immediately after the accident, and where he died, the intestate, although conscious at times, could give no account of it, and the only evidence of his movements and conduct appears in the evidence of David Warnock and Mrs. Mary Holt, called by the plaintiff. Warnock testified "that he heard a horse running away out on Broadway going rapidly, in a large lope with a young man trying to check him; that he saw the deceased coming toward him on the crossing of F Street when the deceased was almost across and that the deceased was struck almost at the sidewalk of F Street; that the horse was going about fifteen miles per hour . . .; that he saw the deceased trying to get on the sidewalk just as he was struck; that he helped take the deceased up on the sidewalk and heard him moaning." Mrs. Holt testified in substance that she watched the intestate "from the time he stepped down from the curbing" to cross over, "until the accident and he went across slowly; that . . . [he] tried to step back after the horse hit him . . . the horse stepped right over him"; he was almost to the curb when he got hit.

The credibility of these witnesses was for the jury. It is argued that the intestate should have heard the noise made by the approaching team. But an uncontrolled team

moving at the rate of fifteen miles an hour is not ordinarily a condition to be anticipated and guarded against by travellers. The jury also could say that, even if the intestate should have heard the noise of the team in Broadway, he had no reason to fear that it would be so deflected as to overreach the crosswalk of F Street and run him down when he was about to step to the sidewalk at the end of the crosswalk. The intestate was bound only to use ordinary care, but in determining what was ordinary care the jury were to consider his infirmity of vision and other conditions of physical weakness incident to his age, and all the conditions bearing upon the question, what care was reasonably necessary to insure his safety. *Neff* v. *Wellesley*, 148 Mass. 487, 495. It could not be ruled as matter of law that the intestate was careless. *Hennessey* v. *Taylor, supra. Keith* v. *Worcester & Blackstone Valley Street Railway*, 196 Mass. 478, 482. *Hanley* v. *Boston Elevated Railway*, 201 Mass. 55. *Mercier* v. *Union Street Railway*, 230 Mass. 397.

The evidence also entitled the plaintiff to go to the jury on the issue of the defendant's negligence. It was unnecessary for the plaintiff to offer evidence that the horse had previously shown a propensity to run wild when harnessed to a vehicle and driven on a public way, and that the defendant knew or should have known of such habit, and there was no evidence as the judge told the jury that the horse was vicious. The horse was neither hitched to any post nor otherwise secured, and there was no person on the seat in charge of the team. It was left at large in the highway without supervision or control. *Southworth* v. *Old Colony & Newport Railway*, 105 Mass. 342. *Carey* v. *Milford & Uxbridge Street Railway*, 193 Mass. 161. *Joyce* v. *Exeter, Hampton & Amesbury Street Railway*, 190 Mass. 304. *Flynn* v. *O'Riordan*, 211 Mass. 477.

The motion for a directed verdict was denied rightly, and the defendant's eighth, ninth, eleventh and twelfth requests could not have been given.

The driver, William Hickey, called by the defendant, who testified that he was absent only three or four minutes, was asked whether he was familiar with the rules and regulations

of the city of Boston relating to the driving of vehicles, and, the witness having answered in the affirmative, the defendant then offered to show that the regulations provided that, "No horse shall be left unattended for a longer period of time than five minutes unless he is tied to a post or weight, or unless the wheels of the vehicle to which he is harnessed are securely fastened or chained." The trial judge, subject to the defendant's exception, excluded the evidence. While not conclusive proof, violation of the regulations could have been shown by the plaintiff as evidence tending to prove the defendant's negligence. *Finnegan* v. *Winslow Skate Manuf. Co.* 189 Mass. 580. We are of opinion that, "No good reason can be given why the defendant should not be allowed to show the converse of that proposition." *Pitcher* v. *Old Colony Street Railway,* 196 Mass. 69, 72. *Nelson* v. *Old Colony Street Railway,* 208 Mass. 159, 162. *McCrea* v. *Beverly Gas & Electric Co.* 216 Mass. 495, 498. If the regulations prescribed a standard of conduct, compliance with it, while evidence of due care, did not, however, exempt the defendant from the duty of exercising ordinary diligence under all the circumstances. *Bradley* v. *Boston & Maine Railroad,* 2 Cush. 539, 543. The regulations should have been admitted. They also were admissible on the degree of the defendant's culpability under the second count for causing the intestate's death.

The defendant also excepted to portions of the instructions relating to the plaintiff's due care. The judge instructed the jury that the due care of the intestate was not to be judged by the standard of care of a man of good hearing and of good eyesight; that all that was required of him was to have exercised the faculties which he possessed; that the care required is not essentially different from the rule applicable to a young child on the street. "If he was negligent, if he ought to have done something different which a man in his physical condition should have done, and if, having done that he could have avoided the accident, then it would have been his duty to do it, and if he did not do it he cannot recover." These instructions were misleading and erroneous. The jury thereunder well might have found that the physical infirmity of

defective eyesight and the weakened condition incident to his age, were not to be considered.   The jury should have been instructed that in the exercise of ordinary care the intestate, if found to be of defective vision, should, as matter of general knowledge, take more care and employ keener watchfulness in walking upon the street and avoiding conditions than a person with good eyesight, in order to reach the standard established by the law for all persons alike, whether they be weak or strong, sound or deficient.   *Keith* v. *Worcester & Blackstone Valley Street Railway, supra,* page 483.

*Exceptions sustained.*