HAROLD BAKER *vs.* BOGUMILA RATKIEWICZ & another.

Hampshire.     January 6, 1931. — April 1, 1931.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Animal. Negligence*, Of keeper of animal. *Practice, Civil*, Requests, rulings and instructions, Charge to jury.

Two counts in an action of tort against a man and his wife were based on allegations that the defendants were owners of a horse which, being on land of the plaintiff's father through negligence of the defendants, trampled upon and injured the plaintiff; and two other counts were similar in their allegations, except that the defendants were alleged to be keepers of the horse. At the trial of the action, there was evidence that the horse was used by both defendants in the business of their farm; that many times, on complaint that it was trespassing, one or the other had driven it out of the premises of the father of the plaintiff; that each of them had referred to it, or had raised no question when it was referred to, as "his" or "her" horse; that one or the other had frequently been seen to turn it out hobbled to pasture; and that the defendant wife had promised once to repair damage which it had done and her husband had attended to the repairs. The defendants testified that the horse belonged to a minor son who cared for it, looked after it, and used it in his occupation. *Held*, that there was evidence of joint ownership or a joint keeping by the defendants.

Further evidence at the trial of the action above described was that the defendants permitted the horse to wander about hobbled; that, if startled, a hobbled horse would "flare up" and might do many things owing to its inability to run; that, not having freedom of movement,

and, thus, being unable to control itself, it might rear awkwardly, fall over, and be a source of danger to anyone; and that while so hobbled and unlawfully in a field of the plaintiff's father, he became startled and injured the plaintiff. *Held,* that a finding was warranted that negligence of the defendants caused the plaintiff's injury.

Allegations in various counts of the declaration in the action above described were that the defendants negligently allowed "the . . . horse to roam about and unrestrained," and that they "negligently and without right allowed" the horse to "trespass," while hobbled, upon land of the plaintiff's father. *Held,* that the action was not based on trespass, but rested on negligence.

Requests for rulings, at the trial above described, which were dependent on the technicalities of an action of trespass properly were denied.

The judge in part instructed the jury at the trial above described as follows: "But where there is no act of God intervening, and where diligence could have insured that the animal would stay upon your own land and not get onto your neighbor's land, then, whether you call it negligence for the animal to be allowed to get away, or whether you say that the liability is incurred without negligence, is of very little consequence. . . . Now if these defendants owned the horse and turned him out hobbled in this way, or permitted him to be turned out hobbled in this way, and in that hobbled condition he trespassed upon the lands of the plaintiff's father and there did damage, the defendants would be liable for such damage as was the natural and probable consequence of the horse being permitted to trespass with the hobbles on; and if a horse so hobbled was naturally a source of danger to any one who might approach him, and what he did was a natural thing to be expected of a horse so hobbled, then the defendants would be liable for the consequences." *Held,* that the jury could not fairly have understood that the defendants could be found liable merely because the horse was trespassing.

Tort, with a declaration as amended in four counts. The defendants were husband and wife. Writ dated December 17, 1925.

In the first count of the declaration, the plaintiff alleged in substance that the defendants were owners of a horse, which they "negligently allowed . . . to roam about and unrestrained"; that such horse, "while negligently allowed to go unrestrained, came upon the property where the plaintiff resided," and knocked down and injured the plaintiff.

The second count of the declaration contained the same allegations as the first, except that the defendants were alleged to be the keepers of the horse.

In the third count the plaintiff alleged that, while he was

"lawfully walking on certain land" owned by his father, "the defendants negligently and without right allowed a a horse owned by them to trespass on said land, unhitched and hobbled," and that, while so trespassing, the horse struck and injured the plaintiff.

The allegations of the fourth count were the same as those of the third, except that the horse was alleged to be kept by and under the control of the defendants, instead of owned by them.

In the Superior Court, the action was tried before *Lummus*, J. Material evidence is stated in the opinion. At the close of the evidence, the judge denied motions by the defendants that verdicts be ordered for them on all and on each of the counts of the declaration, and in the course of a colloquy respecting such motions called to the attention of counsel for the defendants that the action was "not in trespass."

The defendants also asked for the following rulings: "3. The defendants are not liable in trespass for the injury unless they were negligent.

"4. Unless the injury happened from the horse conducting himself as such animals ordinarily do, the defendants are not liable.

"5. The defendants are not liable in this action unless the plaintiff proves they jointly owned the horse.

"6. A person is not liable simply because the horse got loose and did damage, he is not a guarantor. His [*sic*] is obliged only to use the care of an ordinarily prudent person to keep the horse from escaping and doing damage.

"7. The mere fact that the horse was at large, if such was the fact, is no evidence of the defendants' negligence, and raises no presumption that the defendants turned it loose or were negligent in the control of it or negligently allowed it to escape."

"9. There is no evidence of any negligence with reference to hobbling the horse."

In the course of his charge, the judge, having stated to the jury in substance that the owner of a horse, cattle or sheep would not be liable to an owner of land for damage

caused by them thereon through their having strayed
thither when they were being driven, or temporarily were
left standing, on or along a public way, unless such straying
was due to negligence on the part of their owner, continued:
"But on the other hand, when your animal is not a dog
or cat, which under the law has a right to wander more
or less at will, and is not an animal being driven down a
highway with or without a wagon in the usual fashion, but
is an animal that you are not exercising immediate super-
vision over but have turned out to pasture, and there is
no person in immediate custody and charge of that ani-
mal, then the law imposes a more stringent duty upon you
as the owner of the animal, not to let it trespass upon the
property of another person. It makes very little differ-
ence whether you say that the liability is founded upon
negligence in letting the animal break away from your
enclosure and go on the neighbor's land, or whether you
say it is an absolute duty that the law imposes upon you
to keep your animal upon your own land and not let it
trespass. . . . But where there is no act of God inter-
vening, and where diligence could have ensured that the
animal would stay upon your own land and not get onto
your neighbor's land, then whether you call it negligence
for the animal to be allowed to get away, or whether you
say that the liability is incurred without negligence, is of
very little consequence. The rule as usually laid down
is, that where an animal like a horse or a cow is turned out
to graze without being in the immediate custody of some
person, the owner or the person who has assumed the
charge and management of the animal is liable if the ani-
mal succeeds in getting away and in getting onto the land
of a neighbor and there does damage. . . . [after comment-
ing on *Cox* v. *Burbidge*, 13 C. B. N. S., at page 438, and
*Lyons* v. *Merrick*, 105 Mass. 71] . . . The defendants,
if they suffered this horse to get away, are liable for the
things that it could reasonably be anticipated that the
horse might do. They would not be liable for some ex-
traordinary and unnatural occurrence wholly foreign to the
habits of a horse such as this was. There is no evidence,

gentlemen, that this horse was an unnatural horse in any way but one. . . . There is nothing unusual shown by the evidence about this horse except one thing. The plaintiff has introduced evidence that this horse was hobbled, and hobbled in such a way that his ordinary freedom of movement was much impaired, and the plaintiff has introduced evidence to the effect that a horse, hobbled as this one was, if startled, would be likely to fall down or rear up and to move erratically as compared with a horse with its full freedom of motion, and that that might result in danger to any one who might be near while the horse was struggling to get away from the thing that startled him. Now if these defendants owned the horse and turned him out hobbled in this way, or permitted him to be turned out hobbled in this way, and in that hobbled condition he· trespassed upon the lands of the plaintiff's father and there did damage, the defendants would be liable for such damage as was the natural and probable consequence of the horse being permitted to trespass with the hobbles on; and if a horse so hobbled was naturally a source of danger to any one who might approach him, and what he did was a natural thing to be expected of a horse so hobbled, then the defendants would be liable for the consequences. But if the injury happened through some act of the horse that was not natural for a horse so hobbled, but was an extraordinary thing dependent upon the individual idiosyncrasies of the horse, his peculiar temper or disposition, then the defendants would not be liable for that happening because there is no evidence that they knew of any such peculiarity or any such idiosyncrasies on the part of the horse."

At the close of the charge, the judge refused to give the rulings quoted above, stating, as to the request numbered 9, "I point out that having ruled that negligence in the ordinary sense is immaterial, I was not called upon to deny that a particular piece of evidence was evidence of negligence. In other words, you have a much broader ruling to which you have already excepted."

There was a verdict for the plaintiff in the sum of $4,292.19. The defendants alleged exceptions.

The case was submitted on briefs.

*R. P. Stapleton, T. H. Stapleton, & W. M. Long,* for the defendants.

*J. D. Ross,* for the plaintiff.

WAIT, J. The plaintiff, a minor, while walking through his father's cornfield, startled a horse which was wrongfully in the field. The horse had been hobbled by putting a rope around its forelegs so that it could not take a step longer than six inches. It reared, swung around, struck the plaintiff with its fore hooves, and injured him. There was evidence that it was used by both defendants in the business of their farm; that many times, on complaint that it was trespassing, one or the other had driven it out of the father's premises; that each of them had referred to it, or had raised no question when it was referred to, as "his" or "her" horse; that one or the other had frequently been seen to turn it out hobbled to pasture; that Mrs. Ratkiewicz had promised once to see about damage which it had done and her husband had attended to the repairs. There was thus evidence for a jury of joint ownership or a joint keeping by the defendants, although they testified that the horse belonged to a minor son who cared for, looked after it, and used it in his occupation. *Maillet* v. *Mininno,* 266 Mass. 86. It was for the jury, not for the judge, to draw the inferences from the testimony, unless, as matter of law, only inferences favorable to the defendants and decisive in their favor were permissible.

There was abundant evidence that the horse was permitted to wander about in its hobbled state. An expert veterinary surgeon testified that, if startled, a hobbled horse would "flare up" and might do many things owing to its inability to run; that, not having freedom of movement, and, thus, unable to control itself, it might rear awkwardly, fall over, and be a source of danger to anyone. This would support a finding of negligence in permitting any horse so shackled to get upon the premises of others. Viciousness of the horse is not involved. Any well-behaved animal might reasonably

be expected to act, if hobbled, as this one did. Consequently whoever owns or controls it will be held in law to act with reference to the reasonable probability of harm to others. "The owner of an animal, or the person who in his place . . . has the . . . custody and control of it, is liable for injuries which he negligently suffers it to commit." *Lyons* v. *Merrick*, 105 Mass. 71, 76.

Although the word "trespass" is used in the third and fourth counts of the declaration, the action is not based on trespass. It rests in negligence. Rulings dependent on technicalities of the action of trespass have no place here. We see no error in the refusal to direct a verdict for the defendants, or either of them, on any count. There was evidence to be weighed by a jury.

There is nothing in the other exceptions. The judge was not bound to instruct in regard to detached portions of the evidence. *Smith* v. *Import Drug Co.* 253 Mass. 368. We have examined the charge as reported in the bill of exceptions, and find that the issues of the case were presented with sufficient fullness and the material rules of law were adequately indicated. The jury could not fairly have understood that the defendants could be found liable merely because the horse was trespassing. Detailed discussion is unnecessary.

*Exceptions overruled.*