ABRAHAM L. CREEGER *vs.* THE SPRINGFIELD RENDERING
COMPANY.

Hampden.    September 19, December 31, 1935. — February 26, 1936.

Present: RUGG, C.J., PIERCE, FIELD, LUMMUS, & QUA, JJ.

*Negligence,* Slaughtering plant.    *Bull.*

Evidence, at the trial of an action against the proprietor of a slaughtering plant for maintaining premises in which, it was alleged, he negligently kept a bull which attacked and injured the plaintiff, a customer of the defendant, which showed merely that a third person took the bull to the defendant's pen in the nighttime and left him tied and that the next morning the bull was loose and injured the plaintiff, did not warrant a finding that the premises were not maintained in a reasonably safe condition for the use of the plaintiff, and it was error to submit the action to the jury without further evidence showing how the bull came to be loose.

TORT.    Writ dated December 11, 1931.

The action was tried in the Superior Court before *Keating,* J.    There was a verdict for the plaintiff in the sum of $3,500.    The defendant alleged exceptions.

*H. A. Moran,* (*S. A. Moynahan* with him,) for the defendant.

*G. D. Cummings, M. H. Kelliher & A. Kamberg,* for the plaintiff, submitted a brief.

PIERCE, J.    This is an action of tort in which the plaintiff alleges that he sustained personal injuries on September 24, 1931, while on the premises of the defendant, owing to the negligence of the defendant, its servants or agents.

The plaintiff's amended declaration reads as follows: Count one: The defendant had under its control a building used for the purpose of confining cattle to be slaughtered; on or about September 24, 1931, "he kept therein" a certain bull, the same being a dangerous animal and accustomed to attack mankind, and the plaintiff while lawfully on the premises of the defendant was attacked by said bull

and injured. Count two: On or about September 24, 1931, the defendant had under its control a building used for the purpose of confining cattle to be slaughtered. On or about said date the defendant negligently kept or allowed to be kept on said premises a certain bull. The said bull while so negligently kept by the defendant attacked and wounded the plaintiff, who was lawfully on said premises by invitation of the defendant, and injured and maimed him from which attack and injury he has suffered and is still suffering great pain of body and mind; and he has been put to much expense for medicine and medical attendance, has lost much time from his regular employment together with other damage.

The case was tried to a jury. At the close of the evidence and before arguments, the defendant presented a motion to direct a verdict in its favor. This motion was denied and the case was allowed to go to the jury on the second count of the plaintiff's declaration as amended. The defendant made and the judge denied, subject to the defendant's exception, the requests which are printed in the footnote.*

The evidence most favorable to the plaintiff warranted the finding of facts in substance as follows: The plaintiff, a cattle dealer, was accustomed to buy cattle for slaughter, and for that purpose had brought such to the defendant's plant for about two years. On September 23, 1931, at about three o'clock in the afternoon, he brought a cow to the defendant's plant, and was informed by the foreman that it could not be slaughtered on that day; the foreman directed him to put his cow into a rear pen and in the morning to remove it to a second pen adjoining the runway and have the cow ready for slaughter. On the same day, after the defendant's plant was closed down, at about eight o'clock in the evening, one Brown, a cattle dealer accustomed to bring cows and bulls there in the evening,

---

* "1. Upon all the evidence the plaintiff is not entitled to recover. 2. There is no evidence that the defendant had any knowledge of any vicious propensities of the bull in question. 3. The defendant was not the owner or keeper of the bull. 4. There is no evidence upon which it can be found that the bull became loose due to any negligent act of the defendant, its agents or servants. 5. When and how the bull became loose is a matter of conjecture."

brought the bull which injured the plaintiff to the defendant's plant, took him off the truck, led him to the second pen because there were other bulls in the first pen, and tied him securely to a good post.  There were cows loose in every pen.  In the cattle yard there is a gate which anyone who comes to the plant with a cow or bull can open.  There are lights on the platform that can be switched on by anyone who desires to enter a pen.  The cows are allowed to run loose but the bulls are tied.  The pens were open to receive cattle at nighttime.  The particular bull weighed between thirteen hundred and fifteen hundred pounds and was from three to four years old.  The effect on bulls, such as the one that caused the injury to the plaintiff, when tied to a post in a pen with cows running loose was to make them excited.  Slaughtering is done at the slaughter house almost every day.  The pens are across the wall from the place where the slaughtering is done.  There is some blood where cattle are slaughtered.  The presence of blood and the smell of blood have an effect upon cows and bulls and sometimes they get "kind of ugly."  The plaintiff the next morning, as directed by the defendant's foreman, arrived at the plant, and stepped into a front pen through which he was forced to go in order to reach the rear pen where his cow was confined.  Before the plaintiff stepped into the pen he noticed cows running around loose.  As he was walking through the pen he was struck and injured by the bull, above described, which had been tied to a post by its owner the night before.

The conflicting evidence warranted a finding for the plaintiff that during the nighttime the pens were open for customers to leave their cattle, and, although there was no rule or instructions, it was understood that bulls when brought in should be tied.  The superintendent of the defendant testified, in substance, that the defendant does not see to it that bulls are tied — it is not concerned whether the bulls are tied or not; that bulls ought to be tied when they are in with a lot of cows; that as a rule they are tied when they are put in those pens; that when he found a bull that was not tied he did nothing unless it was a vicious

bull; that it depended on the size of the bull and that he would not leave a bull two or three years old untied if he saw he was untied and there were other cattle in the yard.

There is no evidence in the record to prove that the defendant had knowledge of the vicious propensities of the bull that injured the plaintiff; nor is there any evidence as to when and how this particular bull became loose, assuming the bull was securely tied to a post when left, as the plaintiff's witness, Brown, testified.

At the outset it is to be noted that the second count of the amended declaration, which was the only count submitted to the jury, is not based on a claim of liability of the defendant that had its origin in an alleged fact that the defendant was the owner or keeper of a wild animal or of a domestic animal which, to the defendant's knowledge, had vicious propensities at and before the time it injured the plaintiff. *Marble* v. *Ross*, 124 Mass. 44, 47. *Dix* v. *Somerset Coal Co.* 217 Mass. 146, 147, 148. *Fraser* v. *Chapman*, 256 Mass. 1, 4. *Greeley* v. *Jameson*, 265 Mass. 465, 471. The gravamen of the second count is not that the defendant kept a vicious animal with knowledge of its propensities, but that it maintained premises on which it negligently kept a bull that attacked and injured the plaintiff while he was lawfully on said premises by the invitation of the defendant.

The second count does not allege that the bull was vicious, and that fact if proved was immaterial except as bearing on the duty of care owed by the defendant. *Leonard* v. *Doherty*, 174 Mass. 565, 571, 572. Under the theory of count two the defendant owed to the plaintiff the duty of reasonable care to keep the premises safe for the use of the plaintiff as customer of the defendant. *Goodwin* v. *E. B. Nelson Grocery Co.* 239 Mass. 232, 234. *Bottcher* v. *Buck*, 265 Mass. 4, 6. *Andrews* v. *Jordan Marsh Co.* 283 Mass. 158. In this aspect of the case the burden was upon the plaintiff to show that the injury to him was a probable consequence of some act or omission for which the defendant was responsible. *Andrews* v. *Jordan Marsh Co.* 283 Mass. 158, 161. The plaintiff has not shown any specific

act or omission which resulted in the bull being unrestrained in the pen. The fact that the defendant used no care at all in restraining the bulls other than to put them in pens does not warrant a finding that there was negligence on the part of the defendant in not seeing that the bull remained tied, that the defendant's failure to inspect the pens during the night was the proximate cause of the injury to the plaintiff, or that the injury would not have resulted had the defendant exercised a high degree of care to ascertain if the bull had become untethered after it was tied to a post in a pen.

There is no evidence in the record to show how the bull came to be running around loose when the plaintiff entered the pen or for how long it had been so unrestrained. In these circumstances the plaintiff has proved, not that his injury was the result of negligence of the defendant, but rather that it was the result of some cause for which the defendant is not liable. *Walker* v. *Benz Kid Co.* 279 Mass. 533, 537, 538, and cases cited. On the whole evidence the jury were not warranted in finding that the premises were not maintained in a reasonably safe condition for the use of the defendant's invitee. It follows that the defendant's exception to the refusal of the judge to direct a verdict for the defendant must be sustained and judgment be entered for the defendant.

<div align="right">

*So ordered.*