ANTOINETTE SALDI, executrix, *vs.* BRIGHTON STOCK YARD COMPANY.

Suffolk.    December 7, 1961. — April 5, 1962.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, & SPIEGEL, JJ.

*Cow.   Negligence,* Cow, Stockyard, One owning or controlling real estate. *Practice, Civil,* Amendment, Reopening.   *Evidence,* Interrogatories, Declaration of deceased person.   *Words,* "Nuisance."

Evidence in an action against the proprietor of a stockyard in a city warranted findings that there was a risk, known to the defendant, of escape of cows from a loading platform because of insecurely fenced lanes of passage across the platform from farmers' trucks to the defendant's pens, that a cow which butted and injured the plaintiff some distance away from the defendant's premises had escaped from the platform by reason of the insufficient arrangements there and had escaped from the premises onto an adjacent street along which the premises were not fenced, and that the defendant was negligent in the operation of the business and liable to the plaintiff even though the defendant's employees took "no part in the unloading" of cows at the platform and were not in control of the cow which escaped.   [92–94]

It was within the discretion of the judge during the trial of an action to allow an amendment of the declaration adding a count more appropriately stating the ground of liability in the light of the evidence already introduced.   [95]

Allowing the plaintiff in an action to reopen for the introduction of more evidence after resting was within the discretion of the judge.   [98]

At the trial of an action prosecuted by the executrix of the original plaintiff following his death before the trial, there was no error with respect to one of two defendants in admitting under G. L. c. 233, §§ 65, 65A, when offered by the executrix, answers of the original plaintiff to interrogatories propounded to him by the other defendant.   [98]

TORT by Frank Saldi.   Writ in the Superior Court dated February 25, 1955.

Saldi died before trial and the executrix of his will was admitted to prosecute the action.   The trial was before *Barron,* J.

*David H. Fulton,* for the defendant.

*Edward J. Barshak, (Bertram A. Sugarman* with him,) for the plaintiff.

WHITTEMORE, J.   The plaintiff had verdicts against the
corporate defendant (Brighton) on count 1 (negligence)
and on count 3 (nuisance) for injuries to her testate (Saldi)
caused on June 7, 1954, by a cow which had escaped from
Brighton's stockyard on Guest Street in the Brighton dis-
trict of Boston.   A verdict was directed under count 2 for
the individual defendant, George McGovern, who, we as-
sume, had been sued as the alleged owner of the cow.   The
case is here on Brighton's bill of exceptions.

The jury could have found facts as stated in this and fol-
lowing paragraphs.   Brighton maintained the stockyard
for the sale and purchase of cows which had ceased to be
milkers and were bought to be taken away for slaughter.
Brighton stationed an employee at its scales and was paid
by the seller for the service of weighing each cow sold.   In
the usual course of business a farmer delivering a cow or
cows for sale would drive his truck from Guest Street north-
erly onto the defendant's premises, unfenced on Guest
Street, and to the rear thereof where he would back his
truck against a "loading in" platform one hundred feet
long and eight feet wide which stood in front of receiving
pens.   Having placed his truck opposite a gate barring one
of six openings into pens, the farmer would swing the gate
so as to extend it across the platform nearly to the truck;
he would also extend across the platform a like gate which,
hinged to a post at the other side of the opening, had been
swung back against the pen fence.   The gates were seven
to seven and one half feet long and extended nearly to the
back of the truck.   The farmer would then drop the tailgate
of his truck and prompt the cow or cows to walk across the
platform in the lane made by the two gates and down a
ramp into the pen.   No employee of Brighton was stationed
at the platform.   The gates in place to form the lane were
not fastened and there was nothing to prevent these gates,
or at least one of them, "being swung closed so that the
cow could get on the platform and go right off the platform
back to where the truck was."   "The remaining areas
where the cattle are" are fenced.   The "loading out" plat-

form at the front of the rows of pens, on Guest Street, was not described. Brighton weighed from 150 to 300 cows each day.

The cow which injured Saldi was first seen, out of control, by someone who shouted that a cow was loose; McGovern, who was unloading another cow, looked up and saw the escaped cow going away from the platform at a point two or three feet distant therefrom and a like distance from his truck. Other trucks were in place at the platform. McGovern, as soon as he had unloaded his cow, took up the chase in his truck. The escaped cow went westerly out of Brighton's yard and, about 440 yards therefrom, near the corner of Guest and Market streets, on private property, she butted Saldi who was at work for his employer in the construction of a substation for the Boston Edison Company. The cow was thereafter pursued by the police and shot.

For years there had been no fence to Brighton's premises along Guest Street although seventeen to twenty years earlier, "before they changed the buildings," there had been a fence with a gate and watchman.

Cows had escaped from the premises on prior occasions. McGovern knew of some escapes; he had helped to bring cows back. Brighton's president, connected with the corporation since 1936, knew of possibly five occasions of escapes since that date; "sometimes . . . [the cows] had to be corralled by the police"; the escapes on most of these occasions had been "from the unfenced area i.e. the platform." Joseph L. Conroy, a police officer, prior to 1954 had been stationed at the Brighton Station, Division 14, for seven years, for four years of which he had been on the day shift. He had had personal experience with escaped cattle in the Market and Guest street area on four occasions including the escape on June 7, 1954. In the fall of 1946 five escaped at one time. To "the best of his knowledge" the escaped cattle came from the stockyard. About three quarters of a mile away was a slaughter house and abattoir which was fenced on all sides except along the river. He

had no knowledge of escapes from the abattoir. Officer Francis J. Handren had knowledge of one other animal "that escaped during that year [1954]." Officer Arthur Ginnetty, attached to the division for seven years prior to June 7, 1954, had "cases with cows or bulls in that area before" that date; he "had one other and another officer."

The police in the Brighton division use shot of heavier gauge "specially designed for these animals." The records of use of shot on animals was referred to unofficially by the officers of the division as the "cowboy record."

Brighton's president, when asked if Brighton could have built additional fences on the platform answered: "And not do business." When asked what Brighton did to prevent escapes, he answered: "We provide the facilities for the farmers to unload at but we take no part in the unloading."

1. There was a basis of liability in the evidence.[1]

In cases of escaped domestic animals "the measure of the plaintiff's rights and the defendant's duties is the common rule of due care." *Carrington* v. *Worcester Consol. St. Ry.* 222 Mass. 120. *O'Connor* v. *Hickey,* 260 Mass. 110. *Texeira* v. *Sundquist,* 288 Mass. 93, 94–95. *Woodman* v. *Haynes,* 289 Mass. 114, 116–117. The rule applies whether the accident is in the public way (see cases last cited) or on private property owned by the plaintiff, *Lyons* v. *Merrick,* 105 Mass. 71, 76; *Walker* v. *Nickerson,* 291 Mass. 522, 525, or by another, *Baker* v. *Ratkiewicz,* 275 Mass. 174, 179–180.[2] It is unnecessary to show that the animal had vicious traits. *Lyons* v. *Merrick, supra. Walker* v. *Nickerson, supra.*

---

[1] For the application of the evidence to the respective counts, see points 2 and 3 below. Brighton in its brief states the issue: "The defendant comes to this court urging that under no version of the evidence was the . . . defendant liable to the plaintiff, either on negligence or on the count for nuisance . . . ."

[2] In *Walker* v. *Nickerson, supra,* the ground of liability for the butting of a cow, "ordinarily harmless," was stated to be its presence as a trespasser on land of the plaintiff; the court said that the injury could be "found to result directly from the trespass." Saldi stood sufficiently in the owner's right to make that principle applicable. *Moore* v. *Worcester Insulation Co. Inc.* 338 Mass. 44, 46, and cases cited. But our other decisions, *supra,* including *Baker* v. *Ratkiewicz,* where the minor plaintiff was injured in his father's cornfield, make it unnecessary to rely thereon.

Action by the animal in accordance with its natural propensities is foreseeable and some control to prevent this is required. *Woodman* v. *Haynes, supra* (unattended horse).

The jury could have found that there was a risk that an escaped cow, even if "superannuated," as Brighton's brief suggests, in the strange environment of city streets, pursued or not, would be sufficiently disturbed to indulge the known propensity of her kind to butt. *Lyons* v. *Merrick, supra* (escaped cow). *O'Connor* v. *Hickey, supra*. *Baker* v. *Ratkiewicz, supra* (hobbled horse, likely to "flare up"). *Woodman* v. *Haynes, supra*.

Brighton contends that these principles are inapplicable because it was not shown to be in control of the cow. See *Lyons* v. *Merrick, supra*, p. 76 (a "person who in . . . place [of the owner] . . . has the exclusive . . . control"). In the circumstances, however, neither exclusive nor immediate control was required for another principle was also applicable. "A possessor of land is subject to liability for bodily harm to others outside the land caused by an activity carried on by him thereon which he realizes or should realize as involving an unreasonable risk of bodily harm to them under the same conditions as though the activity were carried on at a neutral place." Restatement: Torts, § 371. Harper and James, Torts, § 27.19. See also Restatement 2d: Torts, Tent. draft no. 4, 1959, § 318: "If a third person uses land or chattels in the actor's possession, the actor is under a duty to exercise reasonable care so to control the conduct of the third person as to prevent him from intentionally harming others, or from creating an unreasonable risk of harm to them, if the actor (a) knows or has reason to know that he has the ability to control the third person, and (b) knows or should know of the necessity and opportunity for exercising such control." In respect of the omission of the words "if present" as applied to the actor, which appear in § 318 as now written, a note says "The actor's presence is certainly not indispensable, and goes only to his knowledge of the activity, and his opportunity to control it."

The jury could have found that Brighton was conducting its business without taking reasonably necessary precautions to prevent escapes and that the risk of escape, known to Brighton, was inherent in the construction and operation of the loading in platform. They could have found also that absence of reasonable precautions permitted the escape of the cow which butted Saldi. The inference was warranted that the escape occurred at the platform while cows were being delivered from the confinement of trucks to the confinement of pens and while both trucks and pens were open to insecurely fenced lanes of passage. There is no suggestion of occasion for freeing cows at or near the platform except for passage across it to a pen. Furthermore, the conclusion was warranted that there was sufficient risk of escape in the way the business was conducted on the premises to make reasonably necessary a fence and gate on Guest Street.

It was a reasonable inference that further precautions were feasible. The jury were not obliged to conclude that provision for dropping bolts or engaging hooks at the ends of the platform gates, or a requirement of opening and closing a gate in a street fence, would have put Brighton out of business. There is no principle that an adverse effect on business would justify the omission of precautions. Brighton's responsibility was not extinguished by the possibility or likelihood that an invitee's carelessness contributed to the escape.

The decision in *Creeger* v. *Springfield Rendering Co.* 293 Mass. 541, relied on by Brighton, is, on its facts, consistent with the foregoing, and recognizes the applicable principle of law. A customer of the defendant had, in the night time, brought a bull to the defendant's slaughtering plant and "tied him securely to a good post" within a pen. In the morning the plaintiff entered the pen to go to his own cow and was struck by the bull, then untethered. The defendant was held not liable, for there was no basis for an inference that its want of care in overseeing the bull or the pen was a cause of the bull being untied. "On the whole evi-

dence the jury were not warranted in finding that the premises were not maintained in a reasonably safe condition for the use of the defendant's invitee" (p. 545). The testimony of the defendant's superintendent that the tying of the bulls was up to the customers, that the defendant was "not concerned," and the testimony that the presence of cows and the smell of blood might excite a bull, do not suggest that the defendant was not under an obligation to provide a safe means of restraint (pen and tying post) or that if, as result of failure to do so, the bull had escaped from the pen the defendant would not have been liable for harm done.

2. No error is shown in the allowance of the motion to add count 3, or in the charge in respect of nuisance.

It was within the judge's discretion, in the course of trial, to allow to be added allegations that Brighton's manner of conducting business endangered lives, constituted a nuisance, and let a cow escape which injured Saldi. G. L. c. 231, §§ 51, 138. *Shapiro* v. *McCarthy,* 279 Mass. 425, 428–429. *Duquenoy* v. *Dorgan,* 341 Mass. 28, 30. Rule 58 of the Superior Court (1954). See *Desmond* v. *Boston Elev. Ry.* 319 Mass. 13, 16.

Except for the confusing reference to nuisance, the new count tersely stated the basis of liability, if any, as indicated by the evidence theretofore adduced. An amendment was advisable in the light of that evidence, for count 1 alleged Brighton's custody and control of the animal and did not specify fault in the operation of the business as the cause of escape.[1]

In view of the sporadic aspects of the escapes there was scant basis, if any, for describing the stockyard as a "nuisance." The use of the word in tort cases based on the defendant's fault should be avoided. *Delano* v. *Mother's Super Mkt. Inc.* 340 Mass. 293, 297. *Ted's Master Serv.*

---

[1] "[T]he defendant . . . owned, and/or controlled and operated a stockyard . . . and invited people to deliver their livestock . . . for . . . slaughtering; . . . the defendant . . . negligently and carelessly suffered and permitted a cow which had been delivered into its control and custody to escape . . . [and] said cow viciously attacked . . . [Saldi]."

*Inc.* v. *Farina Bros. Co. Inc.* 343 Mass. 307, 311. Restatement: Torts, c. 40, introductory note, pp. 216, 220–221.[1]

The judge, with support in opinions of this court, charged that "In nuisance you do not have to show negligence." This unqualified statement tends to suggest liability without fault contrary to the applicable principle. *Delano* v. *Mother's Super Mkt. Inc., supra.* There was, however, no exception to this part of the charge, and the need of finding a breach of duty in such a case of "nuisance" was expressly stated by the judge. She said in substance that it was the duty of every one to use, construct and maintain his property in a way not likely to cause injury to others, and posed the question: "[D]id . . . [this property] cause injury to this man because of its improper maintenance, conduct or supervision?"

3. The more appropriate count, on the evidence, was count 3, disregarding the unnecessary reference to nuisance. It was not error, however, to let both counts go to the jury.

Brighton filed two motions for directed verdicts, each addressed to both counts. One of the motions was entitled "On Variance." It specified as to count 1 the absence of proof that a cow was being taken to a slaughterhouse or that the cow escaped from Brighton's premises. As to count 3, the motion specified absence of evidence of ownership of the premises and of a sufficient number of escapes to constitute a nuisance. Brighton does not argue the variance issue. There was nothing in the points specified. Brighton's control and operation of the premises was shown; there was a sufficient number of escapes to show known risk and the reference to a slaughterhouse was not relevant to liability. There was of course evidence that the cow escaped from the defendant's premises.

---

[1] Seavey, Nuisance: Contributory Negligence and other Mysteries, 65 Harv. L. Rev. 984, 985, note 4, observes that "nuisance" is a word "which is and will be used by the courts," and, p. 995, states, "The primary function of nuisance as a separate topic . . . is to mark out the area within which it is unreasonable for one to subject his neighbors or the public to noise, vibrations, fumes, immorality or the risk of physical harm. Where there is a nuisance because of risk of harm, nuisance overlaps negligence. But its rules are neither esoteric nor eccentric; they follow the normal pattern of tort principles. . . . In general it may be said that legal fault is a requisite for nuisance . . . ."

In the circumstances the rule stated in *Leigh* v. *Rule,* 331 Mass. 664, 667–668, applies. The "evidence was sufficient in any legal form of declaring" and each count in substance averred liability for injuries by a cow out of control because of Brighton's fault.

4. There was no error in charging under count 1 that "[i]t is not necessary for . . . Brighton . . . to control the animal." The judge sufficiently stated the ground of liability in respect of construction, maintenance, and use of the premises.[1]

5. The defendant's evidential exceptions are not so argued as to require our attention. Its brief says only "For the most part their validity is bound up with what has been said hereinbefore as to questions of nuisance and its introduction by amendment, the alleged escapes, which were said to be from the 'Market St.-Guest St. area' (which included the Abattoir), rather than from the defendant's plant, and the controversial police 'records,' which neither side could find. It would serve no useful purpose to take these up one by one."

The relevance of the evidence of prior escapes was plain; it was the means of showing defective premises and Brighton's knowledge thereof, actual and constructive; it showed that cows were apt to escape under these conditions. The defendant does not contend that there was not a basis for concluding that the condition of the premises was essentially the same. The absence of a fence along the street was admitted; and, as to the gates on the platform, the defendant's brief says, "The defendant, moreover, did not operate the gates, and over the years they had served the purpose of the customers adequately." The defendant, in its argument in respect of control, contends that it is specu-

---

[1] "[I]n running those premises . . . did they owe a duty to protect . . . [the] public whether [or not] they controlled the animal . . .? [I]f . . . there was no proper supervision and control . . . was [that] what a prudent and reasonable person would do . . .? If you find . . . [that such a] person . . . would have done other things, whether it is fences or watchmen or anything else you may think of, . . . or . . . [that] they failed to do their duty through . . . the way it was built, then you come to the second question [of causal connection with the injury]."

lative whether any prior escape was due to negligence of others or unavoidable accident; also that the police officers were unable to state that the escaped cows observed by them came from the defendant's premises. For reasons already stated, the defendant's responsibility for defective premises would not be cut off because of concurring negligence of others. The judge could properly have exercised her discretion to exclude the testimony of the police officers as to the escape of other cows not positively traced to the stockyard. But this testimony was unimportant in view of the testimony of Brighton's president and McGovern. The precise number of prior escapes, beyond a substantial total, was inconsequential. The evidence descriptive of the abattoir's premises was sufficient to establish that it was unlikely that cows had escaped therefrom. The testimony of the officers tended to show escapes from the stockyard. The defendant shows no prejudicial error. See *Robitaille v. Netoco Community Theatre of North Attleboro, Inc.* 305 Mass. 265, 268; *Denton* v. *Park Hotel, Inc.* 343 Mass. 524, 527–528; *Bemis* v. *Temple,* 162 Mass. 342.

There was no exception to the testimony when first offered that the police records were referred to as the "cowboy record." In any case, we see no prejudice in the testimony that a record was kept or that the officers had a vivid name for it.

6. No error is shown in allowing the plaintiff to reopen after resting (a discretionary matter), and then to introduce answers of Saldi to interrogatories propounded by McGovern. G. L. c. 233, §§ 65, 65A; *Thornton* v. *First Natl. Stores, Inc.* 340 Mass. 222, 225. *Stanton's Case,* 331 Mass. 378, 379–380.

*Exceptions overruled.*