Curtin, J.
This is an action in negligence to recover for damage to plaintiff James Smith’s (“Smith”) boat resulting from excessive water turbulence caused by the propellers of tug boats operated by defendant Bay State Towing, Inc. (“Bay State”). After a jury waived trial, the court made a finding for Smith and entered judgment in his favor in the amount of $8,500.00, plus interest and costs.
The sole issued argued by Bay State on this Dist./Mun. Cts. R. A. D. A., Rule 8C, appeal is whether the trial judge erred in allowing Smith to reopen his case to present additional testimony after both parties had rested.[1]
The additional testimony in question was that of Michael Cassarano (“Cassa-rano”), an eyewitness to the tug boat incident and the resulting damage. In his answers to Bay State’s interrogatories, Smith had identified Cassarano as an eyewitness and had provided his address and telephone number to Bay State. Smith’s counsel had spoken to Cassarano on more than one occasion prior to trial, found him to be cooperative and accepted Cassarano’s assurances that he would be at the trial. As a result, Smith’s attorney did not subpoena Cassarano. Cassarano did not appear at the beginning of the trial.
Immediately prior to the start of trial, Smith’s counsel informed the court that he would present three witnesses who were in attendance, and that he had an eyewitness who had not yet appeared at court. The parties then stipulated that on October 30, 1997, Bay State tug boats, in the course of berthing a 738 foot salt ship, generated propeller wash which moved a finger pier at the Quarterdeck Marina (“Marina”) in Chelsea. The parties also agreed to admit as exhibits correspondence between Cassarano and Bay State and its insurer in which Cassarano set forth his eyewitness account of the damage to the docks at the Marina, as well as to his personal property, by excessive backwash caused by the propellers of the Bay State tug boats.
Smith presented his three witnesses. He first called Michael Duarte (“Duarte”), the vice president of operations and senior docking pilot of Bay State. Duarte testi *105 fied that on October 30, 1997, he was assigned to bring a salt ship, the “Antonis Angelicoussis,” to the mineral dock at the Eastern Terminals and was aboard the salt ship to give orders to the Bay State tug boats which were pushing the salt ship to its berth. During the trip from the Harbor along the Chelsea Creek, the boats passed in close proximity to the Marina. Duarte observed that some of the docks at the Marina were twisting and being damaged as a result of the tug boat propeller-generated wash, and called the Marina to report that the propeller turbulence had buckled Marina docks. After completing the salt ship berthing, Duarte went to the Marina and observed that some docks had twisted, buckled and been “ripped off of the pilings.” He also saw one boat with its bow line tied to a piling which, Duarte testified, was an unusual method of securing a boat and put it at risk of damage. Duarte did not know, however, if that particular boat was Smith’s. He further indicated that in roughly ninety (90%) percent of all cases of berthing commercial ships in that area, there is no damage to, or buckling of, piers; that in approximately ten (10%) percent of cases, there is some movement of the piers; and that in this particular case, the propeller wash and resulting damage were unusual. Finally, Duarte stated that, in his opinion, the slips at the Marina were not seaworthy and that the Marina did not belong at that location in the bay due to shallow water depths and the disturbance of water caused by commercial shipping.
Smith called Donald Noel (“Noel”) as an expert witness. Noel, a marine surveyor who provides investigative services for insurance companies, banks and boat purchasers, has extensive experience in appraising boat values, and has testified in court on many occasions. Noel had previously managed the Marina and was familiar with Smith’s boat because he had serviced it for ten years. While Noel did not witness the events of October 30,1997, he examined Smith’s boat four or five days later. Noel determined that both the inner and outer hulls of the boat had separated at the helm; that the cleats, to which boat lines are tied to secure the boat to a dock, had been torn; that the hull was ripped prior to the cleats breaking loose; and that as a result of this damage, the boat was no longer seaworthy. Noel opined that the damage had been caused when the boat had been abruptly lifted out of the water. He valued the boat at $11,000.00 to $12,000.00 prior to the October 30, 1997 incident, and at $2,500.00 to $3,000 after the incident. He also indicated that the location of the Marina was not a problem because the docks did not extend into the commercial shipping lanes designated by the Army Corps of Engineers.
Smith testified last. He stated that he owned the 23 foot fishing boat in question and had docked it at a slip leased from the Marina for the previous five years. The day before the incident, he secured his boat with three bow lines, a stern line and a spring line to prevent the boat from moving, and indicated that he knew how to properly tie a boat because he had owned boats for thirty years. Two or three days after the incident, Smith went to the Marina in response to a call from a staff person. He found his boat located four to five slips from where he had previously docked it. The dock to which Smith had originally moored his boat had been lifted into mid air. Despite a lack of rain, Smith’s boat was filled with water and had exterior damage. Smith subsequently sold the boat for $2,500.00.
After Smith rested, Bay State made an oral motion for a “directed verdict,” which was denied by the trial judge. During Bay State’s closing argument, its counsel referred to the fact that the only eyewitness testimony offered at trial was that given by Duarte, Bay State’s officer. That comment prompted the trial judge to inquire about the eyewitness Smith’s counsel had mentioned at the beginning of trial, and to permit Smith’s counsel to make a telephone call to Cassarano to determine if he was available to testily. Smith’s counsel could not reach Cassarano and asked for leave to subpoena the witness for the next day. Bay State’s counsel objected, and the trial was concluded.
Cassarano did in fact appear in court shortly after the conclusion of the trial. He had been unable to attend the trial earlier in the day because he had been at his *106 mother’s funeral. Given those circumstances, the trial judge permitted Smith to reopen his case three days later to present Cassarano’s testimony. When Bay State objected to the reopening of the case, the judge allowed Bay State to recall Noel as a rebuttal witness.
Cassarano’s testimony amplified the evidence contained in the exhibits to which the parties had stipulated. Cassarano indicated that he was on his boat in the Marina on October 30,1997, and saw Bay State tug boats pushing a large vessel. As he had boats docked at the Marina for over twenty years, he recognized the Bay State tugs and had often observed their movement during the berthing of large commercial ships. Cassarano testified that on the date in question, two tug boats came within 20 feet of the Marina, that the sterns of the tugs were facing the Marina slips, and that for 30 to 40 minutes the backwash propelled into the Marina by the tugs created a situation so dangerous at the Marina that Cassarano made emergency calls to the tug boat captains and the Coast Guard. He observed the propeller wash “tearing the piers apart,” physically lifting them up into the air. The float at which Smith’s boat was docked was twisted upwards to such a degree that it lifted Smith’s boat out of the water, suspending it upright in the air from the bow with its stern submerged. Cassarano stated that the boat was properly tied with bow, stern and spring lines to what had become a twisted, wrecked dock. Cassa-rano observed that Smith’s boat was coming apart at the hull, and he and two others moved the boat to another slip to prevent it from sinking. Bay State’s counsel cross-examined Cassarano and then called Noel as a rebuttal witness. As noted, the court ultimately entered a finding in favor of Smith.
The decision to allow a party to reopen its case after it has rested to admit additional, material evidence rests within the sound discretion of the trial judge. Duchesneau v. Jaskoviak, 360 Mass. 730, 734 (1972); Salid v. Brighton Stock Yard Co., 344 Mass. 89, 98 (1962). Contrary to Bay State’s contention, that discretion may be properly exercised in the appropriate case to permit additional evidence even after a motion for a “directed verdict” has been filed. See Dew v. Laufauci, 2001 Mass. App. Div. 95, 96. As it is the appellant’s burden on appeal to establish reversible error, MacDonald v. Adamian, 294 Mass. 187, 190 (1936); Kurker v. National Grange Ins. Co., 1988 Mass. App. Div. 182, 184, it was incumbent upon Bay State to demonstrate that the trial judge’s decision to reopen this case constituted an abuse of discretion; i.e., the decision was so “characterized by arbitrary determination, capricious disposition, whimsical thinking or idiosyncratic choice,” Lawrence Sav. Bank v. Garabedian, 49 Mass. App. Ct. 157, 161 (2000), that it amounted to a ruling that “no conscientious judge, acting intelligently, could honestly” have made. Mamleo v. Abban, 434 Mass. 256, 266 (2001); Maniscola v. Kenworthy, 2002 Mass. App. Div. 203, 204. Bay State has failed to meet that burden.
Cassarano was not a surprise witness. He had been identified in answers to interrogatories as an eyewitness to the events of October 30, 1997, and Smith’s counsel had advised the court on the morning of trial that he intended to present the eyewitness in his case in chief. Moreover, much of Cassarano’s “testimony” was already before the court in the form of his correspondence with Bay State and its insurer which was introduced into evidence as agreed upon exhibits. In that correspondence Cassarano detailed that on October 30, 1997, he witnessed the “tremendously excessive back-wash caused by the Bay State tugs while trying to push a very large ship into port.” He further stated that “[tjhis back-wash was so severe that it caused two of the docks (60 feet) to turn completely upside down causing tremendous damage....” Finally, inferences arising from the testimony of Smith’s witnesses would have warranted a finding as to causation without Cassa-rano’s testimony. Bay State stipulated and Duarte testified that the damage to the Marina docks was caused by the excessive propeller wash from Bay State tug boats. Smith testified that the dock at which he had tied his boat was damaged and *107 literally in mid air. Noel testified that the damage to Smith’s boat was caused by its being abruptly lifted from the water.
Although Smith’s counsel had not subpoenaed Cassarano, he had told the court that the witness had assured him he would appear. Consistent with that representation, Cassarano did appear at court later that same day. His tardiness was due to his attendance at his mother’s funeral. The court promptly scheduled the continuation of trial for only three days later, and permitted Bay State’s attorney to call and further question Smith’s expert in rebuttal to Cassarano’s testimony.
In short, there was no abuse of discretion in the trial judge’s decision to permit Smith to reopen his case to admit Cassarano’s testimony.
Appeal dismissed.
So ordered.

 Bay State listed as an additional issue in its notice of appeal whether the trial court erred in denying its motion for a “directed verdict” at the close of Smith’s case. A motion testing the legal sufficiency of the plaintiff’s evidence in a trial without a jury is a Mass. R. Civ. R, Rule 41(b) (2), motion for involuntary dismissal and not a motion for a “directed verdict.” Kendall v. Selvaggio, 413 Mass. 619, 620 n.3 (1992); Sonogram v. Metropolitan Prop. & Cas. Ins. Co., 2002 Mass. App. Div. 68, 69 n.3. In any event, the single-sentence reference in Bay State’s brief to an alleged insufficiency of the evidence to permit a finding in Smith’s favor the issue of causation does not rise to the level of acceptable appellate argument requiring appellate review. McClure v. Secretary of the Commonwealth, 436 Mass. 614, 615 n.3 (2002); Ayasli v. Armstrong, 56 Mass. App. Ct. 740, 756 (2002).