Hand, PJ.
This case arises from a postforeclosure eviction action brought in the Wrentham District Court by plaintiff-appellee ClearVue Opportunity XV, LLC (“ClearVue”) against defendant-appellant Gary Sheehan (“Sheehan”). Sheehan appeals pretrial rulings on certain motions in limine, including those limiting his ability to challenge the chain of assignments of his mortgage preceding the foreclosure, as well as the trial judge’s adoption of those rulings on the day of trial. Additionally, Sheehan appeals the trial court’s entry of a directed verdict against him on the issue of possession. For the reasons below, we affirm the appealed motions in limine, with the exception of those precluding Sheehan from challenging (1) the basis of knowledge of the affiant on the affidavit of sale, and (2) the substance of that affidavit; as discussed below, however, we find any error harmless. We affirm the court’s allowance of the plaintiff’s motion for directed verdict.
I. Background.

A. Facts.

On December 15, 2000, Sheehan refinanced the mortgage on property in Norfolk, Massachusetts, executing a note in the amount of $393,600.00 made payable to New Century Mortgage Corporation (“New Century”). The note was secured by a mortgage on the property granting power of sale to New Century and its successors and assigns. The mortgage was recorded in the Norfolk County registry of deeds.
*126 On December 26,2000, New Century assigned the mortgage and note to U.S. Bank National Association, as Trustee for the ACE Securities Corp., Home Equity Loan Trust, Series 2001-NCI Asset Backed Pass-Through Certificates (“USB”).[2]
The parties stipulate that Sheehan defaulted on the note and mortgage in 2005. On December 2,2005, in an effort to satisfy the notice requirements set out in the power of sale set forth at paragraph 22 of Sheehan’s mortgage,[3] Litton Loan Servicing LP (“Litton”), “on behalf of the owner and holder of’ Sheehan’s mortgage,[4] sent a certified letter to Sheehan titled, “NOTICE OF DEFAULT AND INTENTTO ACCELERATE.” There is no evidence that Sheehan acted to cure the default.
On or about October 29, 2007, USB assigned the mortgage and note to Credit Based Asset Servicing and Securitization, LLC (“CBASS”).[5] Sometime in 2007, *127 Litton retained the law firm of Michienzie and Sawin (“M&S”) to represent it in the foreclosure on Sheehan’s mortgage; M&S initiated foreclosure proceedings against Sheehan pursuant to G.L.c. 244. CBASS appears to have declared bankruptcy in 2010; it assigned the mortgage and note to ClearVue on or about November 5,2010.[6] In the same year, 2010, Litton terminated its agreement with M&S for representation on the foreclosure of Sheehan’s mortgage, indicating that it was no longer the loan servicer for the mortgage, and ClearVue retained M&S to resume the foreclosure proceedings on the Sheehan mortgage.[7] ClearVue purchased the property at foreclosure auction on May 13,2011; the evidence at trial included a foreclosure deed dated May 18,2011 and recorded on May 24, 2011. ClearVue filed its eviction action in June, 2011 in the Wrentham District Court.
B. Procedural history.
Although nominally a summary process action, this case extended across more than two years of litigation and involved numerous motions. We summarize the relevant procedural history.
ClearVue filed suit in the Wrentham District Court in June, 2011. Sheehan answered the complaint, and the parties engaged in protracted discovery and related motions practice. The case was set down for a July, 2012 trial date.[8]
Additional motions ensued; the July, 2012 trial date, and subsequent trial dates, were postponed.
In anticipation of a December, 2012 trial date, ClearVue filed “Plaintiffs Renewed Omnibus Motion In Limine” (“ClearVue’s Renewed Omnibus”). In that motion, ClearVue argued that:
A. Defendant... should be precluded from offering any evidence challenging ClearVue’s possession of the underlying Note, in any capacity;
B. Sheehan should be precluded from offering any evidence challenging ClearVue’s reliance upon a certified copy of the Foreclosure Deed and Affidavit as proof that it acquired legal title strictly according to the power of sale provided in the mortgage;
C. Sheehan should be precluded from offering any evidence challenging the adequacy of the Affidavit of Sale under G.L.c. 244, §15;
*128 D. Sheehan should be precluded from offering any evidence challenging the validity of the Mortgage Assignments transferring the underlying Mortgage to ClearVue;
E. Sheehan should be precluded from offering any evidence regarding the New York express trust known as ACE Securities Corp., Home Equity Loan Trust, Series 2001-NC1.
After hearing on October 19, 2012, the court ruled on ClearVue’s Renewed Omnibus, allowing it as to points C, D, and E, and denying it on points A and B. The effect of this ruling was to preclude Sheehan from offering evidence challenging the adequacy of the affidavit of sale, or of the mortgage assignments, and from offering evidence of the terms of the USB trust.[9] Appreciating that rulings on motions in limine are not final, McGowan v. Amaru, 2013 Mass. App. Div. 91, citing Luce v. United States, 469 U.S. 38, 41-42 (1984), the motion judge explicitly indicated that his decisions on the parties’ motions in limine were “subject to regulation by the trial judge.” Following a special assignment, the case was continued for trial to March 11,2013.
Several motions later, the parties appeared for a jury trial on March 11, 2013. Both parties filed additional motions in limine: Sheehan filed a “Renewed Motion In limine” (“Sheehan’s Renewed Motion In Limine”) seeking to preclude ClearVue from introducing certain documents into evidence at trial[10]; arguably, the motion sought to preclude ClearVue from introducing any documents at all. Sheehan having identified no witnesses, other than himself, or any evidence he planned to introduce *129 at trial, ClearVue filed “Plaintiffs Motion In Limine Regarding Witnesses and Exhibits To Be Relied Upon By Defendant And Motion To Dismiss Defendant’s Affirmative Defenses,” seeking, inter alia, to prevent Sheehan from offering any late-disclosed evidence.
After an extended hearing, the trial judge denied Sheehan’s Renewed Motion In limine; allowed ClearVue’s motion in limine to prohibit Sheehan from introducing any undisclosed witnesses or exhibits; denied ClearVue’s motion to dismiss Sheehan’s affirmative defenses; and adopted the motion judge’s rulings on ClearVue’s Renewed Omnibus. In adopting the motion judge’s rulings, the trial judge precluded Sheehan from challenging the adequacy of the affidavit of sale, from challenging the validity of the assignments of the mortgage and note, and from introducing evidence of the terms of the USB trust. In the course of on-the-record conversation with counsel planning the conduct of the trial, however, the trial judge told counsel for Sheehan that her rulings (specifically, the ruling limiting Sheehan to the evidence he had disclosed to ClearVue before trial) were subject to review as the trial progressed, and encouraged counsel to request reconsideration of her rulings on an as-needed basis.[11]
The case was tried to a jury. ClearVue called witnesses and introduced documentary evidence; the defendant rested at the close of the plaintiff’s case, having thoroughly cross-examined the plaintiff’s witnesses, but without seeking to introduce evidence of his own. Each party moved for a directed verdict in his or its favor at the close of all the evidence.
*130 Before the court ruled on the motions for directed verdict, ClearVue indicated that it wished to call “rebuttal” witnesses. The court reopened the evidence; ClearVue called two additional witnesses. Following the rebuttal case, the judge ruled on the parties’ motions for directed verdict, allowing ClearVue’s motion as to possession against Sheehan, and denying Sheehan’s motion. The case went to the jury solely for determination of damages.
II. Analysis.
“A foreclosure sale conducted pursuant to a power of sale in a mortgage must comply with all applicable statutory provisions, including in particular G.L.c. 183, §21, and G.L.c. 244, §14. These statutes authorize a ‘mortgagee’ to foreclose by sale pursuant to a power of sale in the mortgage, and require the ‘mortgagee’ to provide notice and take other steps in connection with the sale.” Eaton v. Federal Nat’l Mtge. Ass’n, 462 Mass. 569, 571 (2012). Section 21 of G.L.c. 183[12] sets out the statutory power of sale, empowering the mortgagee to foreclose on a defaulting mortgagor without prior judicial authorization, provided the foreclosing mortgagee complies with the power of sale in the mortgage and with the “statutes relating to the foreclosure of mortgages by the exercise of a power of sale.” Eaton, supra at 579-580, quoting Moore v. Dick, 187 Mass. 207, 211-213 (1905).[13] Those statutes are set out in G.L.c. 244, §§11-17C. Id. at 581, citing U.S. Bank Nat’l Ass’n v. Ibanez, 458 Mass. 637, 645-646 (2011). “Principal among these is c. 244, §14,” id., which “requires a mortgagee initiating foreclosure proceedings, inter alia, to publish notice of the foreclosure sale in a local newspaper and mail notice of the foreclosure sale to the owner of record within statutorily prescribed time periods.”[14] Id. at 581 n.17.
*132 Summary process is a statutory cause of action that enables a person to recover possession of land that is acquired through a mortgage foreclosure sale. See G.L.c. 239, §1. See also Bank of N.Y. v. Bailey, 460 Mass. 327, 332-333 (2011). ‘Challenging a plaintiffs entitlement to possession has long been considered a valid defense to a summary process action for eviction where the property was purchased at a foreclosure sale.’ Id. at 333. “The purpose of summary process is to enable the holder of the legal title to gain possession of premises wrongfully withheld. Right to possession must be shown and legal title may be put in issue.... Legal title is established in summary process by proof that the title was acquired strictly according to the power of sale provided in the mortgage; and that alone is subject to challenge’ (emphasis added). Id., quoting Wayne Inv. Corp. v. Abbott, 350 Mass. 775, 775 (1966). See Lewis v. Jackson, 165 Mass. 481, 486-487 (1896) (to make prima facie showing of title, mortgagee only needs to prove that it obtained deed to property at issue, and that deed and affidavit of sale, showing compliance with power of sale, were duly recorded). Failure to comply strictly with the power of sale renders the foreclosure sale void. See U.S. Bank Nat'l Ass’n v. Ibanez, 458 Mass. 637, 646-647 (2011), and cases cited.
U.S. Bank Nat'l Ass’n v. Schumacher, 467 Mass. 421, 428 (2014).[15]
The former owner may defend against summary process by challenging the plaintiffs entitlement to possession. Eaton, supra at 571, citing Bank of N. Y. v. Bailey, supra at 333. Where the defendant in the eviction action claims that the mortgage holder failed strictly to adhere to the requirements under the statutory power of sale under G.L.c. 183, §21 and c. 244, §§11-17C, proof of any violation of these requirements will *133 void the foreclosure sale and, therefore, defeat the eviction. See Schumacher, supra at 428, citing Ibanez, supra at 646-647.
A. Motions in limine.
We begin with consideration of Sheehan’s appeal of the court’s in limine rulings. We review the court’s rulings, to the extent that the appellant preserved them by objections at trial, see McGowan, supra, for an abuse of discretion. See Pilkons v. Profit Enhancement Servs., 2009 Mass. App. Div. 9, citing Avolizi v. Bradford White Corp., 2003 Mass. App. Div. 93, 94-95. Such an abuse is characterized by “’a clear error of judgment in weighing’ the factors relevant to the decision, see Picciotto v. Continental Cas. Co., 512 F.3d 9, 15 (1st Cir. 2008) (citation omitted), such that the decision falls outside the range of reasonable alternatives.” L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014), citing Zervos v. Verizon N.Y., Inc., 252 F.3d 163, 168-169 (2d Cir. 2001), and Adoption of Mariano, 77 Mass. App. Ct. 656, 660 (2010).
1. Challenge to affiants qualification and to elements of prima facie case.
We are not persuaded by Sheehan’s arguments that the author of the affidavit of sale was not qualified and that, accordingly, the court erred in allowing ClearVue to rely on the affidavit of sale.
It is well settled that “in a summary process action a foreclosure deed and statutory form [affidavit of sale] constitute prima facie evidence of the right of possession.” Federal Nat'l Mtge. Ass’n v. Hendricks, 463 Mass. 635, 642 (2012), citing Lewis, supra at 486-487. “[W]here the affidavit of sale is in the statutory form or meets the particular requirements of [G.Lc. 244,] §15,[16] a plaintiff has made a prima facie case [for possession].” Id. at 643. The “statutory form” is found at Form 12 of the Appendix to G.L.c. 183, and provides as follows:
_named in the foregoing deed, make oath and say that the principal _interest_obligation_mentioned in the mortgage above referred to was not paid or tendered or performed when due or prior to the sale, and that I published on the_day of_, 19_, in the_, a newspaper published or by its title page purporting to be published in_aforesaid and having a circulation therein, a notice of which the following is a true copy. (INSERT ADVERTISEMENT)
Pursuant to said notice at the time and place therein appointed, I sold the mortgaged premises at_, public auction by_, an auctioneer, to_, above *134 named, for_dollars, bid by him, being the highest bid made therefor at said auction.
Sworn to by the said_, 19_, before me_.
In this case, ClearVue offered an affidavit of sale signed by David Haddad (“Haddad”) as “agent and authorized signatory for [ClearVue].” Haddad is a principal of ClearVue. The affidavit follows the language of the statutory form, but rather than stating, as the form does, that the affiant, personally, took the actions detailed in the affidavit, Haddad states that “ClearVue” took those actions. The affidavit also does not indicate the source of Haddad’s knowledge of the facts included in the affidavit.[17] At the October, 2012 hearing on the motions in limine, Sheehan argued that he should be permitted to challenge Haddad’s personal knowledge of the information included in his affidavit and, in doing so, the validity of that affidavit. In support of this argument, Sheehan referred to the decision in HSBC Bank USA, Nat’l Ass’n v. Galebach, 2012 Mass. App. Div. 155, although he did not argue that case in detail.[18] ClearVue argued, and the motion judge determined, that the Appeals Court’s ruling on a similar question in Deutsche Bank Nat’l Trust Co. v. Gabriel, 81 Mass. App. Ct. 564, 569 n.15 (2012) controlled, that Haddad’s affidavit was sufficient as a matter of law, and that Sheehan was not entitled to challenge the basis of Haddad’s knowledge.[10] While we agree that *135 the Haddad affidavit is facially sufficient, we do not read Gabriel, which considered the sufficiency of an affidavit of sale in the context of a summary judgment motion, and not a trial, to preclude Sheehan from challenging the Haddad affidavit. Any prejudice from this error, however, is purely academic: in order to "challenge” Haddad’s personal knowledge of the facts in the affidavit, we see no alternative but for Sheehan to have elicited testimony from Haddad himself.[20] Haddad was not called as a witness at trial; Sheehan never identified him as a potential witness in his case, or sought leave to call him on a late disclosure. As, under the circumstances here, any error in precluding Sheehan from challenging the affidavit had no practical effect, we find it to have been harmless, and do not find in it a basis for vacating the judgment or ordering a new trial.
2. Challenge to substance of affidavit of sale.
On the same reasoning, while we find it to have been error for the court to have precluded Sheehan from “challenging” the substance of Haddad’s affidavit of sale as the affidavit was used to demonstrate compliance with G.L.c. 244, §15, we conclude that the error was harmless. For Sheehan to have “challenged” the affidavit, he would have needed to call Haddad as a witness, or to present some extrinsic evidence, steps that he did not take or request leave to take.
Having laid a foundation for the admission of the foreclosure deed and affidavit, and the court’s having admitted them, ClearVue established a prima facie case for possession. Hendricks, supra at 642, citing Lewis, supra at 486-487 (“[I]n a summary process action a foreclosure deed and statutory form [affidavit of sale] constitute prima facie evidence of the right of possession.”). Where Sheehan failed to controvert this evidence, ClearVue was entitled to rely on it While the fact finder was free to reject the evidence, it was not required to do so; “[t]he basic rules of evidence hold that uncontroverted prima facie evidence should be taken as proved.” Federal Nat’l Mtge. Ass’n v. Hubner, 2014 Mass App. Div. 114, 115, citing Mass. G. Evid. §301 (2013).
3. Challenge to validity of mortgage assignments.
General Laws c. 183, §54B governs the assignment of mortgages. It provides:
Notwithstanding any law to the contrary, ... (2) a[n] ... assignment of mortgage;... if executed before a notary public, justice of the peace or other officer entitled by law to acknowledge instruments,... by a person purporting to hold the position of president, vice president, treasurer, clerk, secretary, cashier, loan representative, principal, investment, mortgage or other officer, agent, asset manager, or other similar office or position, including assistant to any such office or position, of the entity holding such mortgage, or otherwise purporting to be an authorized signatory for such entity, or acting under such power of attorney on behalf of such entity, acting in its own capacity or as a general partner or co-venturer of the entity holding *136 such mortgage, shall be binding upon such entity and shall be entitled to be recorded, and no vote of the entity affirming such authority shall be required to permit recording.
G.L.c. 183, §54B.
An assignment “comporting with the requirements,” Bank of N.Y. Mellon Corp. v. Wain, 85 Mass. App. Ct. 498, 503 (2014), of this statute is ‘“otherwise effective to pass legal title’ and cannot be shown to be void.” Id,., quoting Culhane v. Aurora Loan Servs. of Neb., 708 F.3d 282, 291 (1st Cir. 2013). In this case, ClearVue presented to both the motion and trial judges evidence to show that the assignments from New Century to USB, from USB to CBASS, and from CBASS to ClearVue met the requirements of §54B. Sheehan sought to challenge those assignments on several grounds. We review the grounds for Sheehan’s objections as they have been preserved in the record.
a. Standing to challenge assignments, generally.
Some of the most contentious pretrial sparring between the parties centered on the court’s determination of Sheehan’s ability to challenge the validity of the mortgage assignments. Historically, both Massachusetts State courts and the Federal courts have ruled that a mortgagor does not have standing to challenge an assignment by which a foreclosing party claims to have acquired a mortgage, reasoning, in most such cases, that “a nonparty who does not benefit from a contract generally has no right to enforce it.” Barcelos v. Deutsche Bank Nat’l Trust Co., No. 13-P-1361 (Mass. App. Ct. July 3, 2014) (unpublished Rule 1:28 decision), citing Cumis Ins. Soc., Inc. v. BJ’s Wholesale Club, Inc., 455 Mass. 458, 464 (2009).
In Sullivan v. Kondaur Capital Corp., 85 Mass. App. Ct. 202 (2014) (Kondaur), however, the Appeals Court revisited the question of a mortgagor’s standing to challenge a mortgage assignment. In Kondaur, the Appeals Court held that a mortgagor subject to foreclosure has standing to challenge the validity of an assignment of his mortgage in one limited circumstance: where the mortgagor claims that the “purported foreclosure was void by reason of [the mortgagee’s] lack of legal authority to conduct it.”[21] Id. at 206. The Appeals Court explicitly limited such challenges “to claims that a defect in the assignment rendered [the assignment] void, not merely voidable.”[22] Wain, supra *137 at 502, citing Kondaur, supra at 206 n.7.[23] Generally, although not exclusively, ‘“a void mortgage assignment is one in which the putative assignor “never properly held the mortgage and, thus, had no interest to assign.’” [Wilson v. HSBC Mtge. Servs., 744 F.3d 1,] 10 [(1st Cir. 2014)], quoting from Culhane v. Aurora Loan Servs. of Neb., 708 F.3d 282, 291 (1st Cir. 2013).” Barcelos, supra. See Ibanez, supra at 651 (“[T]heremust be proof that the assignment was made by a party that itself held the mortgage.”).
Although Kondaur opened the door for mortgagors like Sheehan to challenge an assignment of his mortgage, the aperture is narrow: Sheehan’s right to challenge a given assignment depended upon his ability to show that the assignment at issue was void.
b. Standing to challenge New Century assignment to USB based on assignment in blank.
With respect to the assignment from New Century to USB, ClearVue had, and ultimately introduced into evidence at trial, an assignment of Sheehan’s mortgage and note from New Century to USB that, on its face, complied with §54B. Sheehan sought to challenge this document by using “Exhibit JJ.” This document, apparently produced by ClearVue in the course of discovery in this case, appeared to be a notarized assignment from New Century “in blank”: the assignment did not identify the assignee of the mortgage.[24] Sheehan argued, without evidentiary support, his suspicions that Exhibit JJ, executed and notarized in blank and, accordingly, void, was improperly altered at some date after its execution and notarization in order to identify an assignee. On that basis, Sheehan argues, the assignment was void. We agree that the assignment would be void if Sheehan could authenticate it. See Ibanez, supra at 652, citing Flavin v. Morrissey, 327 Mass. 217, 219 (1951), Macurda v. Fuller, 225 Mass. 341, 344 (1916), and G.L.c. 183, §3 (“[A] conveyance of real property, such as a mortgage, that does not name the assignee conveys nothing and is void; we do not regard an assignment of land in blank as giving legal title in land to the bearer of the assignment”). Notwithstanding the protracted history of the case, however, there is nothing in the record to suggest that Sheehan’s discovery efforts yielded any pretrial admissions, stipulations, or other evidence establishing that Exhibit JJ is what Sheehan suspected it to be, or that the assignment as recorded was an improperly altered version of a blank assignment. If substantiated, Sheehan’s allegations would be troubling. At trial, however, Sheehan did nothing more than present the court with an unauthenticated copy of Exhibit JJ and demand that the court find that the existence of that unauthenticated document vindicated Sheehan’s claims that the recorded New Century assignment was an improper effort to resurrect a void document — the blank assignment — by altering it after its execution. That is not enough to invalidate the assignment. See Select Portfolio Servicing, Inc. v. Needel, Massachusetts Land Court, No. 07-MISC-349527 (May 14, 2014) (facially valid, recorded assignment *138 not invalidated by argument, unsupported by evidence, that assignment was actually executed in blank). Under the circumstances, we determine that the court acted properly in determining that Sheehan lacked standing to challenge the facially proper assignment from New Century to USB.
c. Standing to challenge assignments into and out of USB based on claimed violations ofPSA.
Next, Sheehan seeks to challenge the assignments both to and from USB based on noncompliance with the terms of the pooling and service agreement (“PSA”) in connection with which USB was apparently created.[25] The assignments to and from USB meet the requirements of G.L.c. 183, §54B. Sheehan argues that the transfers into and out of the trust as part of the assignments to and from USB were made in contravention of the terms of the trust, and so were “ultra vires” acts voiding each assignment.
This is an unsettled area of the law. See, e.g., Schaefer-Ung v. U.S. Bank, Massachusetts Land Court, No. 12-MISC-469684 (June 10, 2014) (noting “split of opinion” on mortgagor’s standing to challenge assignments made in violation of PSA and collecting cases). We find guidance in Federal cases like Halacy v. Wells Fargo Bank, N.A., U.S. Dist. Ct., No. 12-11447 (D. Mass. Nov. 21, 2013), and in Massachusetts cases, including Hoyt v. BAC Home Loan Servicing, L.P., No. 14-P-517 (Mass. App. Ct. Apr. 6, 2015) (unpublished Rule 1:28 decision) (“Nor did the judge err in ruling that the plaintiffs lack standing to challenge the validily of the assignment from MERS to U.S. Bank. See Woods v. Wells Fargo Bank, NA., 733 F.3d 349, 354 (1st Cir. 2013) (holding that ‘claims that merely assert procedural infirmities in the assignment of a mortgage, such as a failure to abide by the terms of a governing trust agreement, are barred for lack of standing’).”); Jenne v. Aurora Loan Servs. LLC, Massachusetts Land Court, No. 13-MISC-477489 Cune 26, 2014) (“A mortgagor lacks standing to void an assignment for a violation of a pooling and servicing agreement because a violated pooling and serving agreement is capable of ratification or confirmation by one with authority to do so. Mitchell [v. U.S. Bank Nat’l Ass’n, Massachusetts Land Court, No. 12-MISC-473427 (March 21, 2014) ]. In most cases, a violation of a pooling and servicing agreement could only render an assignment voidable, not void. Id.”); Schaefer-Ung, supra (same); Select Portfolio Servicing, Inc., supra (same).
In Halacy, the Massachusetts District Court considered a postforeclosure eviction in which, as in Sheehan’s case, the defendants’ mortgage was assigned to USB as trustee of a REMIC trust[26] created by a PSA. In addition to a January 31,2006 closing date, the PSA in Halacy provided, as Sheehan represents that the PSA in his case does at Section 10.02, that:
*139 None of the Depositor, the Servicer, the Trust Administrator or the Trustee shall sell, dispose of or substitute for any of the Mortgage Loans nor accept any contributions to any Trust REMIC after the Closing Date unless it has received an Opinion of Counsel, addressed to the Trustee and the Trust Administrator... that such [contribution] will not (a) affect adversely the status of any Trust REMIC as a REMIC or (b) cause any Trust REMIC to be subject to a tax on ‘prohibited transactions’ or ‘contributions’ pursuant to the REMIC Provisions.
The Halacys’ mortgage was transferred into the trust more than four years after it “closed.” After the defendants defaulted on the mortgage, the mortgage holder foreclosed and the defendants’ property was sold at auction to USB.
The legal backdrop against which the Massachusetts District Court assessed the facts in Halacy is consistent with Massachusetts State law. The First Circuit, like Massachusetts, permits a mortgagor to challenge the assignment of his mortgage “under limited circumstances, such as when a mortgage assignment is ‘invalid, ineffective or void.’” Id., citing Culhane, supra at 291. Considering a mortgagor’s challenge to the assignment of a mortgage into a trust like the ones at issue in Halacy and in this case, however, the First Circuit has not permitted the mortgagor to “invoke the terms of PSA to challenge an otherwise valid assignment.” Id., citing Woods, supra at 354 n.4 (plaintiff would not have standing to claim that assignments were in violation of trusf s PSA since such violation would render assignment only voidable). While noting New York case law to the contrary — specifically, Wells Fargo Bank, N.A v. Erobobo, 972 N.Y.S.2d 147 (Sup. Ct. 2013) (finding transfer of assignment of mortgage into REMIC trust after closing date and by party other than “depositor” in violation of terms of PSA rendered assignment void under New York law) — the District Court found the weight of Federal authority to have “held that under New York law, an assignment of a mortgage into a trust in violation of the terms of the PSA is voidable, not void.” Halacy, supra, citing Koufos v. U.S. Bank N.A., 939 F. Supp. 2d 40,49 n.5, 56 n.2 (D. Mass. 2013) (“non-PSA-compliant” transaction is typically “voidable,” rather than “void” under New York law), Sigaran v. U.S. Bank Nat’l Ass’n, U.S. Dist. Ct., No. H-12-3588 (S.D.Tex. May 29, 2013) (same), Svoboda v. Bank of Am., N.A., 964 F. Supp. 2d 659 (W.D. Tex. 2013) (same), and Bank of Am. Nat’l Ass’n v. Bassman FBT, LLC, 2012 Ill. App. 2d 110729 (2012) (“[N]umerous cases, including several that specifically reference [N.Y. Est. Powers & Trusts Law §] 7-2.4, indicate that under various circumstances a trustee’s ultra vires acts are not void.”). Erobobo has since been overruled. “In any event, Erobobo, as a mortgagor whose loan is owned by a trust, does not have standing to challenge the plaintiff’s possession or status as assignee of the note and mortgage based on purported noncompliance with certain provisions of the PSA (see Bank of N.Y. Mellon v. Gales, 116 A.D.3d 723, 725 [(2014)]; Rajamin v. Deutsche Bank Nat’l Trust Co., 757 F.3d 79, 86-87 [(2d Cir. 2014)]).” Wells Fargo Bank, N.A. v. Erobobo, 127 A.D. 3d 1176, 1178 (2015).
Like the defendants in Halacy, Sheehan challenges the assignment — here, from New Century to USB — on the ground that the assignment into the trust violated the terms of the PSA. We find here, as the District Court did in Halacy, that even assuming Sheehan’s argument on this point to be true, the transfer of the mort *140 gage into the trust in violation of the PSA would not invalidate the assignment.[27] Id. Sheehan does not, on this ground, have standing to challenge the assignment. See Hoyt, supra, citing Woods, supra at 354 (holding that “claims that merely assert procedural infirmities in the assignment of a mortgage, such as a failure to abide by the terms of a governing trust agreement, are barred for lack of standing”); Jenne, supra (“A mortgagor lacks standing to void an assignment for a violation of a pooling and servicing agreement because a violated pooling and serving agreement is capable of ratification or confirmation by one with authority to do so. Mitchell!,] [supra]. In most cases, a violation of a pooling and servicing agreement could only render an assignment voidable, not void. Id.”); Schaefer-Ung, supra (same); Select Portfolio Servicing, Inc., supra (same).
Sheehan's challenge to USB’s assignment of the mortgage out of the trust and to CBASS fails, based on the same reasoning.
d. Standing to challenge USB assignment to CBASS based on identity of signatory and notarization defects.
With respect to the assignment from USB to CBASS, in addition to Sheehan’s PSA-related arguments, he contends that the assignment is invalid based on the fact that a signatory to the purported assignment, Denise Bailey, signed as “attorney in fact” for USB in one location on the document and as “assistant secretary” of USB in another location on that paper. Section 54B of G.L.c. 183 provides that an assignment of mortgage executed “by a person purporting to hold” one of the enumerated positions, including “secretary,” “shall be binding upon such entity and shall be entitled to be recorded.” See Abate v. Freemont Inv. & Loan, Massachusetts Land Court, No. 12-MISC-464855 (December 10, 2012) (where assignment is signed by one whom execution block or notarization describes as holding position set out in §54B, assignment is valid and binding pursuant to that section, unless the signature is forgery). Sheehan offers no precedent for the idea that Litton’s signing in this way is a material defect in the assignment, and we find none. Even if the defect were “material,” its effect would be to make the assignment voidable, not void. See Mortgage Elec. Registration Sys., Inc. v. Agin, U.S. Dist. Ct, No. 09-CV -10988 (D. Mass. Nov. 17,2009). The motion and trial judges did not err in ruling that Sheehan lacked standing to challenge the assignment from USB to CBASS on the above grounds.
e. Standing to challenge CBASS assignment to ClearVue based on notarization defects.
Sheehan challenges the assignment from CBASS to ClearVue based on concerns about the notarization of that assignment. Pursuant to statute, and other than in the case of conveyances from the United States, notarization is prerequisite to the recording of a deed. G.L.c. 183, §29 (“No deed shall be recorded unless a certificate *141 of its acknowledgment or of the proof of its due execution, made as hereinafter provided, is endorsed upon or annexed to it, and such certificate shall be recorded at length with the deed to which it relates; but this section shall not apply to conveyances from the United States.”). According to Revised Executive Order No. 455, §2 (May 14,2004), the signatory of an acknowledged document must (a) appear “in person” before the notary public; (b) “[be] identified by the notary public through satisfactory evidence of identity”; and (c) indicate “to the notary public that the signature on the document was voluntarily affixed by the individual for the purposes stated within the document.” The same executive order, however, at §8, explicitly states that a “ [f] ailure... to comply with the requirements set forth in this Executive Order shall not have any effect on the validity of the underlying document” and “should not be the basis of refusal to accept the document for filing, recordation, registration, or acceptance by a third party.” See Culverwell v. Culverwell, No. 08-P-1663 (Mass. App. Ct. Sept. 16, 2009), quoting Revised Executive Order No. 455, §§8(b), (c) (May 14, 2004). While any failings in the notarization of the assignment from CBASS to ClearVue could render the assignment voidable, those failings would not make the assignment void. Sheehan has no standing to challenge the assignment on this ground.
f. Standing to challenge CBASS assignment to ClearVue based on purportedly invalid transfer.
In the statement of facts included in his brief, Sheehan indicates that the transfer from CBASS to ClearVue was made after CBASS had filed bankruptcy and without court approval. The brief cites to Sheehan’s Renewed Motion in Limine, but provides little factual support for the course of events as he describes it, and cites no supporting legal authority for his position that those facts would void the assignment to ClearVue. Absent further briefing, we do not consider this argument. Daniels v. Ciccone, 2012 Mass. App. Div. 83, 84 n.1, citing Duvivier v. Kay’s Oasis Enters., Inc., 2010 Mass. App. Div. 31, 34 n.2 (argument not briefed on appeal is waived). See Dist./Mun. Cts. R. A. D. A., Rule 16(a) (4).
4. Preclusion of defense evidence of terms of USB trust.
As discussed above, we find that Sheehan did not have standing to challenge the assignments to and from USB. There was no error in the court’s rulings preventing him from offering evidence of the terms of that trust.
B. ClearVue’s introduction of “rebuttal evidence.”
It is well within the discretion of the trial judge to allow a party to reopen its case after it has rested to admit additional, material evidence. Smith v. Baystate Towing, Inc., 2003 Mass. App. Div. 104, 106, citing Duchesneau v. Jaskoviak, 360 Mass. 730, 734 (1972), and Saldi v. Brighton Stock Yard Co., 344 Mass. 89, 98 (1962). In the proper exercise of that discretion, a judge may permit additional evidence even after a party’s filing of a motion for a directed verdict. Id., citing Dew v. Laufauci, 2001 Mass. App. Div. 95, 96. In claiming that the trial judge abused his or her discretion, the appellant bears the burden of proving an abuse of that discretion. Id. Such an abuse is characterized by “’a clear error of judgment in weighing’ the factors relevant to the decision, see Picciotto v. Continental Cas. Co., 512 F.3d 9, 15 (1st Cir. 2008) (citation omitted), such that the decision falls outside the range of reasonable alternatives.” L.L. v. Commonwealth, supra. In this case, the trial judge permitted ClearVue to reopen the evidence on the narrow issue of whether the holder of Sheehan’s mortgage had met *142 the requirements of paragraph 22 of the mortgage by providing the contractually required notice of default and acceleration. ClearVue called only previously disclosed witnesses; there was no risk of unfair surprise or prejudice to Sheehan in the subject matter or the witnesses. The court closely monitored the evidence as it came in, and kept the scope of the reopened evidence limited to the issue on which ClearVue had moved to reopen. There was no abuse of discretion in the court’s decision to reopen the evidence, or in the narrowly focused manner in which it did so.
C. Directed verdict.
A motion for directed verdict must be denied if “anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff.” Poirier v. Town of Plymouth, 374 Mass. 206, 212 (1978), quoting Raunela v. Hertz Corp., 361 Mass. 341, 343 (1972). On appeal of the trial judge’s decision allowing the plaintiff’s motion for directed verdict on the issue of possession, we view the evidence in the light most favorable to the defendant. See Balkin v. Frank M. Katz, Inc., 373 Mass. 419, 420 (1977); Grant v. Carlisle, 328 Mass. 25, 26 (1951). As discussed above, the plaintiff made its prima facie case by introducing certified copies of the recorded foreclosure deed and affidavit of sale. It also established a chain of statutorily compliant and recorded mortgage assignments from New Century to ClearVue. Sheehan opted to introduce no evidence to rebut the plaintiffs case; ClearVue was entitled to judgment as a matter of law on the issue of possession. See Hubner, supra at 115 (“[Tjhe basic rules of evidence hold that uncontroverted prima facie evidence should be taken as proved.”).
To the extent that Sheehan’s motion for directed verdict included argument on the issue of whether the mortgagee had complied with the requirements of paragraph 22 of the mortgage by providing Sheehan with preacceleration notice of his default and right to cure, those are also unavailing. Having successfully moved to reopen the evidence, ClearVue introduced evidence that Litton had, “on behalf of the owner and holder” of the mortgage, provided the required notice on December 2,2005. Sheehan argued that Litton was not the appropriate entity to provide such notice and, in any event, as foreclosure proceedings were not initiated until 2010, that the 2005 notice was impermissibly stale.
Under the mortgage, the “Lender” is the mortgage holder. The acceleration notice here was sent by Litton “on behalf of the owner and holder.” Sheehan cites to no authority indicating that the language of paragraph 22 must be interpreted to require the lender itself to send the acceleration notice. We find none, and note that such a requirement would be impractical, as it would prohibit even counsel for the lender from sending such notices. We conclude that substantial compliance is sufficient. See Coelho v. Asset Acquisition & Resolution Entity, LLC, U.S. Dist. Ct., No. 13-10166 (D. Mass. March 31,2014) (noting that in Schumacher, Supreme Judicial Court held that §35A, which does not regulate statutory power of sale, does not require strict compliance under Ibanez). We find that the notice substantially complies with the requirements of paragraph 22, and so was proper in this regard.[28]
*143 With respect to the issue of staleness, paragraph 22 permits the lender “at its option” to accelerate the mortgage if the mortgagor fails to cure the default within the time specified in the lender’s required notice of acceleration. Absent any more specific requirement, the lender’s decision to accelerate the mortgage must be made within a reasonable time after the eviration of the cure period, where the mortgagor fails to cure. While we find the five-year hiatus between the acceleration notice sent to Sheehan and ClearVue’s initiation of foreclosure proceedings was not reasonable, we note that in order to succeed in showing that the delay in foreclosing should invalidate the foreclosure or defeat a directed verdict, Sheehan was required, as a matter of contract law, to show prejudice resulting from the defective notice. See Coelho, supra (as contractual requirement as to content of notice to cure “was not part of the statutory power of sale,” for party to successfully rely on defect in notice to defeat foreclosure and sale, party would have to show “actual prejudice from the defect.”). In this case, Sheehan made no such showing. His arguments fail concerning the insufficiency of the acceleration notice, and the staleness of ClearVue’s action in reliance on that notice.
The judgment is affirmed.

The assignmentindicatesthatitwas signed by Magda Solorzano, “A.V.P.\Shipping Manager” — a designation we interpret as “assistant vice-presidenf’ — for New Century, before a California notary. The notarization date is “December 26,2000”; the assignment was recorded in the Norfolk County registry of deeds on August 26,2002.

 Paragraph 22 of Sheehan’s mortgage provides:
22. Acceleration; Remedies. Lender [defined in the mortgage as ‘the mortgagee’] shall give notice to Borrower prior to acceleration following Borrower’s breach of any covenant or agreement in this Security Instrument. ... The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys’ fees and costs of title evidence.

 The letter itself does not explicitly name the “owner and holder of Sheehan’s loan. Litton’s letterhead on the certified letter identified Litton as “An Affiliate of C-BASS.” Dennis Regan, a principal of ClearVue, testified that Litton was the “loan servicer” used by CBASS, but there was no direct evidence at trial that Litton acted for CBASS in sending the notice of default in this case, or the identity of the entity to which Litton referred in the letter as “owner and holder” of the loan.

 The assignment indicates that it was signed by Denise Bailey, “Assistant Secretary, Litton Loan Servicing LP, Attorney in Fact’ for USB and notarized on October 29, 2007. The assignment indicates a recording date of June 25, 2009 in the Norfolk County registry of deeds.

 The assignment was signed by David Mantell, “Senior Vice President” for CBASS, with a notarization date of November 23, 2010, and was recorded in the Norfolk County registry of deeds on December 21,2010.

 Sheehan’s objections to ClearVue’s evidence on this point included argument that Sheehan’s mortgage was subject to two foreclosure actions, one in 2007 and another in 2010. There is no evidence to support the existence of two separate foreclosure actions on Sheehan’s mortgage.

 In July, 2012, before the scheduled trial date, both parties filed motions in limi-ne; ClearVue’s filing was titled, “Plaintiffs Omnibus Motion In Limine” (“ClearVue’s Omnibus”). After hearing on July 16, 2012, the court denied both parties’ motions in limine “without prejudice.” While the record before us does not include a copy of ClearVue’s Omnibus, the motion judge’s written decision states, “Evidence challenging the adequacy of the affidavit of sale would be admissible, as well as any evidence that challenges the validity of assignments as related to the possession of legal title.”

 The ruling permitted Sheehan to challenge the eviction on the grounds that ClearVue did not possess the note, and on the basis of ClearVue’s reliance on certified copies of the foreclosure deed and affidavit.

 Specifically:
a) the Defendant’s December 15,2000 Note, or any copy thereof;
b) the Blank Assignment of Mortgage executed on December 26,2000 by Magda Solorzano, or any copy, whether recorded or not;
c) the Blank Assignment of Mortgage as tampered with and/or doctored subsequent to December 26,2000;
d) the December 26,2000 Assignment of Mortgage from [New Century] to [USB], or any copy, whether recorded or not;
e) the July 25,2005 blank Assignment of Mortgage with [USB] as assign- or, or any copy, whether recorded or not;
t) the October 29,2007 Assignment of Mortgage from [USB] to [CBASS], or any copy, whether recorded or not;
g) the January 3,2008 Assignment of Mortgage from [USB] to [CBASS], or any copy, whether recorded or not;
h) the November 5,2010 blank Assignment of Mortgage with [CBASS] as assignor, or any copy, whether recorded or not;
i) the November 5,2010 Assignment of Mortgage from [CBASS] subsequently filled and notarized on November 23,2010 with the assignee’s name hand-written in as ClearVue Opportunity XV, LLC, or any copy, whether recorded or not;
*129 j) any copy, whether recorded or not, of any other Assignments of Mortgage that relate in any way to Defendant’s note and mortgage;
k) the foreclosure deed;
l) the foreclosure affidavit; and
m) other document that the Plaintiff may offer as an exhibit.
The bases Sheehan argued in support of the motion included, among others: (1) that because ClearVue’s discovery responses included several nonidentical copies of Sheehan’s note, ClearVue was unable to show that any copy was “true and correct,” and so should be permitted to introduce none of them; (2) that while Sheehan should be permitted to challenge the assignments into and out of the USB trust, ClearVue as a nonparty and nonbeneficiary of the trust should not be permitted to challenge Sheehan’s evidence concerning that trust; (3) ClearVue was required to show compliance with the terms of the USB trust (specifically, the pooling and servicing agreement, or “PSA”), but was unable to do so, and so could not show a valid assignment to or from USB.

 In just one example of the trial judge’s consistently thoughtful and measured responses to the parties many and vigorously argued objections, the court told counsel, “That [ruling and the considerations behind it] [do] not mean that I will not consider issues as they arise during the course of this trial. And I am going to not only instruct you but encourage you that if you do think that you have a particular exhibit that should be considered by the jury, please bring it to my attention because that is not necessarily the final ruling related to that. But I will take those issues up on a case-by-case basis should they arise during the course of the trial.”

 The “statutory power of sale,” set out in G.L.c. 183, §21, provides as follows:
The following ‘power’ shall be known as the ‘Statutory Power of Sale’, and may be incorporated in any mortgage by reference:
(POWER.)
But upon any default in the performance or observance of the foregoing or other condition, the mortgagee or his executors, administrators, successors or assigns may sell the mortgaged premises ... by public auction on or near the premises then subject to the mortgage,... first complying with the terms of the mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of a power of sale, and may convey the same by proper deed or deeds to the purchaser or purchasers absolutely and in fee simple; and such sale shall forever bar the mortgagor and all persons claiming under him from all right and interest in the mortgaged premises, whether at law or in equity.

 The distinction between the “contractual power of sale in the mortgage” and the statutes relating to the power of sale is of significance to our discussion of the motion for directed verdict in this case, discussed below.

 Section 14 of G.L.c. 244 provides:
The mortgagee or person having estate in the land mortgaged, or a person authorized by the power of sale, or the attorney duly authorized by a *131 writing under seal... may, upon breach of condition and 'without action, perform all acts authorized or required by the power of sale; provided, however, that no sale under such power shall be effectual to foreclose a mortgage, unless, previous to such sale, notice of the sale has been published once in each of 3 successive weeks, the first publication of which shall be not less than 21 days before the day of sale, in a newspaper published in the city or town where the land lies or in a newspaper with general circulation in the city or town where the land lies and notice of the sale has been sent by registered mail to the owner or owners of record of the equity of redemption as of 30 days prior to the date of sale, said notice to be mailed by registered mail at least 14 days prior to the date of sale to said owner or owners to the address set forth in section 61 of chapter 185, if the land is then registered or, in the case of unregistered land, to the last address of the owner or owners of the equity of redemption appearing on the records of the holder of the mortgage, if any.... A newspaper which by its title page purports to be printed or published in such city, town or county, and having a circulation in that city, town or county, shall be sufficient for the purposes of this section.
The following form of foreclosure notice may be used and may be altered as circumstances require; but nothing in this section shall be construed to prevent the use of other forms.
(Form.)
MORTGAGEE’S SALE OF REAL ESTATE.
By virtue and in execution of the Power of Sale contained in a certain mortgage given by_to_dated_and recorded with_Deeds, Book_ page_of which mortgage the undersigned is the present holder,_
(If by assignment, or in any fiduciary capacity, give reference to the assignment or assignments recorded with_Deeds, Book_page_of which mortgage the undersigned is the present holder,_).
for breach of the conditions of said mortgage and for the purpose of foreclosing the same will be sold at Public Auction at_o’clock,_M. on the _day of_A.D. (insert year),_(place)_all and singular the premises described in said mortgage,
(In case of partial releases, state exceptions.)
To wit: ‘(Description as in the mortgage, including all references to title, restrictions, encumbrances, etc., as made in the mortgage.)’
Terms of sale: (State here the amount, if any, to be paid in cash by the purchaser at the time and place of the sale, and the time or times for payment of the balance or the whole as the case may be.)
Other terms to be announced at the sale.
(Signed)_
Present holder of said mortgage_
A notice of sale in the above form, published in accordance with the power in the mortgage and with this chapter, together with such other or further notice, if any, as is required by the mortgage, shall be a sufficient *132 notice of the sale; and the premises shall be deemed to have been sold and the deed thereunder shall convey the premises. ...
For purposes of this section and section 21 of chapter 183, in the event a mortgagee holds a mortgage pursuant to an assignment, no notice under this section shall be valid unless (i) at the time such notice is mailed, an assignment, or a chain of assignments, evidencing the assignment of the mortgage to the foreclosing mortgagee has been duly recorded in the registry of deeds for the county or district where the land lies and (ii) the recording information for all recorded assignments is referenced in the notice of sale required in this section. The notice shall not be defective if any holder within the chain of assignments either changed its name or merged into another entity during the time it was the mortgage holder; provided, that recited within the body of the notice is the fact of any merger, consolidation, amendment, conversion or acquisition of assets causing the change in name or identity, the recital of which shall be conclusive in favor of any bona fide purchaser, mortgagee, lienholder or encumbrancer of value relying in good faith on such recital.

 As discussed below, we read Schumacher to require strict compliance with the statutory power of sale; in the case of contractual power of sale, the requirement is substantial compliance.

 Section 15 of G.L.c. 244 provides:
The person selling, or the attorney duly authorized by a writing or the legal guardian or conservator of such person, shall, after the sale, cause a copy of the notice and his affidavit, fully and particularly stating his acts, or the acts of his principal or ward, to be recorded in the registry of deeds for the county or district where the land lies, with a note or reference thereto on the margin of the record of the mortgage deed, if it is recorded in the same registry. If the affidavit shows that the requirements of the power of sale and of the statute have in all respects been complied with, the affidavit or a certified copy of the record thereof, shall be admitted as evidence that the power of sale was duly executed.

 Form 12 does not explicitly include or require any such language.

 Galebach held that an affidavit of sale that lacked an indication of the affiant’s personal knowledge about the contents of the affidavit was not competent evidence in a summary judgment context, where Mass. R. Civ. P., Rule 56, requires that any supporting affidavit “be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.” Id. at 160, quoting Mass. R. Civ. P., Rule 56(e). ClearVue’s argument in the course of the hearing distinguished the facts of this case from those in Galebach by characterizing the Galebach affianf s statement as a “disavowal” of knowledge of the facts in her affidavit While we do not agree with this characterization of the language of the Galebach affidavit we do distinguish this case from Galebach based on the inapplicability of Rule 56(e)’s requirements to evidence offered at trial.

 In Gabriel, the affiant, Nolan, “attorney in fact’ for Wells Fargo Bank, N A. (“Wells Fargo”), stated that “Wells Fargo” had caused the statutory notice of the foreclosure sale to be published in particular newspapers, and that Nolan himself had sent the notices required by G.L.c. 244, §14: “I also complied with Chapter 244, Section 14 of the Massachusetts General Laws, as amended, by mailing the required notices certified mail, return receipt requested.” The affidavit described additional actions performed by Wells Fargo. The affidavit did not recite that it was made on Nolan’s personal knowledge. Id. at 570 n.15. The Appeals Court ruled that the Nolan affidavit “largely tracked the language of the statutory form affidavit. It omitted no material information from the statutory form, and its only additions were those pertinent to the specific facts of the foreclosure sale of the property at issue in this case. A comparison of the text of the model form ... with that of Attorney Nolan’s affidavit... shows the limited differences between the two. Indeed, the defendants point to no specific or significant difference between Attorney Nolan’s affidavit and the statutory form. Attorney *135 Nolan’s affidavit was, therefore, as a matter of law ‘sufficients under G.L.c. 183, §8, and accordingly also satisfied the requirements of G.L.c. 244, §15.” Id. at 569-570.

 We note that the record is completely devoid of any suggestion that Sheehan ever had evidence that Haddad’s statements were not based on personal knowledge, or made any offer of his intent to introduce any rebuttal evidence, despite the trial judge’s clear invitation to Sheehan’s counsel to readdress Sheehan’s ability to call late-disclosed witnesses as the trial progressed.

 The trial court did not have the benefit of Kondaur at the times the rulings disputed here were made. In any event, as the defects that Sheehan claims would, even viewed in the light most favorable to him, make the disputed assignments voidable and not void, the change in the law does not aid Sheehan in his effort to secure a new trial.

 “‘“Void” contracts or agreements are “those ... that are of no effect whatsoever; such as are a mere nullity, and incapable of confirmation or ratification.’” Wilson [v. HSBC Mtge. Servs.], 744 F.3d 1[,] [9] [(1st Cir. 2014)], quoting Allis v. Billings, 47 Mass. 415, 417 (1843).” Mitchell v. United States Bank Nat’l Ass’n, Massachusetts Land Court, No. 12-MISC-473427 (March 21, 2014). An assignment made by one who did not properly hold the mortgage at the time of the assignment would be void, as the purported assignor had no interest to assign. See id., discussing Culhane, supra at 291. “‘By contrast, “voidable” refers to a contract or agreement that is “injurious to the rights of one party, which he may avoid at his election.’” Wilson, [supra at 9], quoting Ball v. Gilbert, 53 Mass. 397, 404 (1847).” Id.

 “As we explained, ‘[a] deficiency in an assignment that makes it merely voidable at the election of one party or the other would not automatically invalidate the title of a foreclosing mortgagee, and accordingly would not render void a foreclosure sale conducted by the assignee or its successors in interest.’” Wain, supra at 502, quoting Kondaur, supra at 206 n.7.

 Additionally, while Exhibit JJ identified Sheehan and provided the date of his mortgage, it did not identify the recording information for the mortgage and note, other than by county.

 The record does not include complete copies of either the trust or the pooling and servicing agreement.

 A real estate mortgage investment conduit (REMIC) is a species of investment vehicle, used to pool mortgage loans and issue mortgaged-backed securities. The REMIC holds commercial and residential mortgages in trust, and issues interests in these mortgages to investors. IRS regulations confer preferred tax status on REMICs, as compared to other mortgage-backed securities, and also require that REMICs be limited in how and when REMICs can acquire mortgages. See 26 U.S.C. §§860A-860G.

 In reaching this conclusion, we acknowledge that the case law cited above and supporting this result incorporates into its reasoning the conclusion that ultra vires acts of a trustee are voidable, and not void, because those acts are capable of being ratified by the beneficiaries of the trust. Where, as here, the trust at issue is a REMIC, there may be real questions about whether and how the beneficiaries could be notified of any ultra vires act, in order to consider ratifying the act, and/or about whether the ratification would have to be an affirmative act or merely the beneficiaries’ failing to object to the ultra vires act.

 To the extent that this determination is in conflict with the majority view in Pinti v. Emigrant Mtge. Co., 472 Mass. 226 (2015), we note that the holding in Pinti is explicitly prospective in its application. Id. at 243.